**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 3:26-cv-00042-RCY |
| STEVEN KOSKI, in his Official Capacity as Commissioner of the Virginia Department of Elections, | |
| Defendant. | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE AND NAACP VIRGINIA STATE CONFERENCE'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.     Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional principles of federalism. ................................................................ 2

II.    The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states. ............................ 3

III.   The Department of Justice sues Virginia for its complete voter list. ................................. 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 6

I.     Virginia's statewide voter registration list is outside the scope of Title III. ....................... 7

       A.     The CRA does not reach Virginia's voter registration list, which is required to be continually updated under HAVA. ........................................ 7

       B.     The statewide voter registration list was created by Virginia election officials and thus did not "come[] into [their] possession." ................................ 9

II.    DOJ did not state an adequate basis and purpose for its demand. .................................... 10

       A.     DOJ failed to provide any "basis" for its demand. ................................................ 12

       B.     DOJ's purported "purpose" is beyond the scope of Title III. ................................ 14

III.   Title III does not preempt Virginia privacy laws. ............................................................ 18

IV.   DOJ's failure to comply with the federal Privacy Act also requires dismissal. ................ 20

CONCLUSION .................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Air Evac EMS, Inc. v. Cheatham*,
   910 F.3d 751 (4th Cir. 2018) .................................................................................... 18

*Alabama ex rel. Gallion v. Rogers*,
   187 F. Supp. 848 (M.D. Ala. 1960) ........................................................................... 15

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
   570 U.S. 1 (2013) ......................................................................................................... 2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................... 6

*Atl. Coast Pipeline, LLC v. Nelson Co. Bd. of Supervisors*,
   443 F. Supp. 3d 670 (W.D. Va. 2020) ...................................................................... 18

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
   854 F.3d 683 (D.C. Cir. 2017) .................................................................................. 10

*CFPB v. Source for Pub. Data, L.P.*,
   903 F.3d 456 (5th Cir. 2018) ......................................................................... 10, 12, 14

*Epcon Homestead, LLC v. Town of Chapel Hill*,
   62 F.4th 882 (4th Cir. 2023) ........................................................................................ 4

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) ..................................................................................................... 8

*Foster v. Love*,
   522 U.S. 67 (1997) ....................................................................................................... 2

*GenBioPro, Inc. v. Raynes*,
   144 F.4th 258 (4th Cir. 2025) .................................................................................... 18

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008) ...................................................................................... 6

*Honeycutt v. United States*,
   581 U.S. 443 (2017) ..................................................................................................... 9

*Huddleston v. United States*,
   415 U.S. 814 (1974) ..................................................................................................... 9

*Husted v. A. Philip Randolph Inst.*,
   584 U.S. 756 (2018) .................................................................................................. 2, 3

*In re Admin. Subpoena No. 25-1431-019*,
   800 F. Supp. 3d 229 (D. Mass. 2025) ..................................................................... 11

*In re Coleman*,
   208 F. Supp. 199 (S.D. Miss. 1962) ........................................................................ 12

*In re Subpoena No. 25-1431-014*,
   810 F. Supp. 3d 555 (E.D. Pa. 2025) ...................................................................... 11

*In re Subpoenas*,
   692 F. Supp. 2d 602 (W.D. Va. 2010) ..................................................................... 17

*Jud. Watch, Inc. v. Lamone*,
   399 F. Supp. 3d 425 (D. Md. 2019) ......................................................................... 19

*Kennedy v. Bruce*,
   298 F.2d 860 (5th Cir. 1962) ................................................................................... 12

*Kennedy v. Lynd*,
   306 F.2d 222 (5th Cir. 1962) ............................................................................ *passim*

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
   818 F. Supp. 3d 34 (D.D.C. 2026) ........................................................................... 22

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
   No. 25-cv-3501, 2025 WL 3198970 (D.D.C. Nov. 17, 2025) ............................ 20, 22

*Leocal v. Ashcroft*,
   543 U.S. 1 (2004) ..................................................................................................... 9

*Londrigan v. FBI*,
   670 F.2d 1164 (D.C. Cir. 1981) ............................................................................... 21

*McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*,
   780 F.3d 582 (4th Cir. 2015) .................................................................................... 6

*Newport News Indus. v. Dynamic Testing, Inc.*,
   130 F. Supp. 2d 745 (E.D. Va. 2001) ....................................................................... 6

*Niz-Chavez v. Garland*,
   593 U.S. 155 (2021) ................................................................................................. 13

*Pippinger v. Rubin*,
   129 F.3d 519 (10th Cir. 1997) ................................................................................. 23

*Project Vote, Inc. v. Kemp*,
   208 F. Supp. 3d 1320 (N.D. Ga. 2016) .................................................................... 20

*Project Vote/Voting for Am., Inc. v. Long*,
  682 F.3d 331 (4th Cir. 2012) ................................................................. 19

*Project Vote/Voting for Am., Inc. v. Long*,
  752 F. Supp. 2d 697 (E.D. Va. 2010) ..................................................... 20

*Pub. Int. Legal Found., Inc. v. Bellows*,
  92 F.4th 36 (1st Cir. 2024) ............................................................. 16, 19

*Pub. Int. Legal Found., Inc. v. Boockvar*,
  431 F. Supp. 3d 553 (M.D. Pa. 2019) .................................................... 19

*Pub. Int. Legal Found., Inc. v. Matthews*,
  589 F. Supp. 3d 932 (C.D. Ill. 2022) ..................................................... 20

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
  996 F.3d 257 (4th Cir. 2021) ........................................................... 16, 19

*Pub. Int. Legal Found., Inc. v. Nago*,
  No. 24-6629, 2026 WL 1144703 (9th Cir. Apr. 28, 2026) ...................... 16

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
  566 U.S. 639 (2012) ............................................................................... 17

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
  120 F.4th 390 (4th Cir. 2024) ................................................................... 2

*Sanchez v. Arlington Cnty. Sch. Bd.*,
  563 F. Supp. 3d 484 (E.D. Va. 2021) ..................................................... 23

*True the Vote v. Hosemann*,
  43 F. Supp. 3d 693 (S.D. Miss. 2014) .................................................... 20

*Union Pac. R.R. Co. v. United States*,
  865 F.3d 1045 (8th Cir. 2017) ................................................................ 10

*United States v. Amore*,
  No. 25-cv-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) .............. 2, 10, 15, 17

*United States v. Benson*,
  No. 25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026) ........................... 1, 9

*United States v. Fontes*,
  No. 2:26-cv-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) .................. 2, 8, 9

*United States v. Galvin*,
  No. 25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ......................... *passim*

iv

*United States v. Morton Salt Co.*,
  338 U.S. 632 (1950) ............................................................................................ 10

*United States v. Newport News Shipbuilding & Dry Dock Co.*,
  837 F.2d 162 (4th Cir. 1988) ............................................................................. 18

*United States v. Oregon*,
  No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ........................... *passim*

*United States v. Powell*,
  379 U.S. 48 (1964) ............................................................................................. 12

*United States v. Wayda*,
  966 F.3d 294 (4th Cir. 2020) ............................................................................. 10

*United States v. Weber*,
  816 F. Supp. 3d 1168 (C.D. Cal. 2026) ............................................................ *passim*

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014) ........................................................................................... 15

*Voter Reference Found., LLC v. Torrez*,
  160 F.4th 1068 (10th Cir. 2025) .................................................................... 16, 19

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) ........................................................................................... 15

## Constitution

U.S. Const. art. I, § 4, cl. 1 .................................................................................... 2

## Federal Statutes

5 U.S.C. § 552a ................................................................................................ 20–23

52 U.S.C. § 20501 ................................................................................................. 2

52 U.S.C. § 20507 .......................................................................................... *passim*

52 U.S.C. § 20701 ............................................................................................. 6–8

52 U.S.C. § 20703 .......................................................................................... *passim*

52 U.S.C. § 21083 .......................................................................................... *passim*

**State Statutes**

Va. Code Ann. § 24.2-405 ......................................................................................... 1, 18

Va. Code Ann. § 24.2-444 ......................................................................................... 1, 18

**Federal Rules**

Fed. R. Civ. P. 12 ......................................................................................................... 6

Fed. R. Civ. P. 25 ......................................................................................................... 5

**Other Authorities**

106 Cong. Rec. 5086 (1960) ...................................................................................... 16

H.R. Rep. No. 107-329 (2001) ...................................................................................... 3

H.R. Rep. No. 86-956 (1959) ................................................................................. 15, 16

*Hearings on Miscellaneous Bills Regarding the Civil Rights of Persons Within the Jurisdiction of the United States: Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary*, 86th Cong. 700 (1959) ...................................................................... 15, 16

*Receive*, *Black's Law Dictionary* (12th ed. 2024) .......................................................... 9

Devlin Barrett & Nick Corasaniti, Trump Administration Quietly Seeks to Build National Voter Roll, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD ................................... 4

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Tracker of Justice Department Requests for Voter Information, Brennan Ctr. for Just. (May 11, 2026), https://perma.cc/S66E-2EZ2 ....................................................................................... 4

**INTRODUCTION**

The United States Department of Justice ("DOJ") has embarked on an unprecedented and extraordinary quest to amass the states' voter registration files for its own use, in an effort not authorized by Congress and contrary to federal laws assigning states the responsibility for maintaining voter registration lists. In this action, DOJ claims that it is entitled to demand (and compel) Virginia's full, unredacted voter list under Title III of the Civil Rights Act of 1960 ("CRA"), but it is wrong.

First, as a threshold matter, the plain text of Title III cannot be read to extend to Virginia's statewide voter registration list. Second, even if it could, Title III expressly requires DOJ to provide the "basis and the purpose" for any request made under its provisions. Here, DOJ fails to provide *any* basis, and its purported purpose—to determine whether Virginia is complying with the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA")—is not an allowable purpose under Title III. Third, Title III does not preempt state privacy laws preventing disclosure of highly sensitive personal information contained in voter registration lists, including Virginia law protecting sensitive voter information. *See* Va. Code Ann. § 24.2-444(C); *see also id.* § 24.2-405(C). Lastly, DOJ has not complied with the federal Privacy Act, a prerequisite before any of the requested information could be collected.

In short, DOJ's novel theory is dead on arrival and sister courts considering DOJ's similar actions seeking to compel the same information from other states in other federal jurisdictions have already dismissed six of those suits. *See United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *argued*, No. 26-1232 (9th Cir. May 19, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026), *argued*, No. 26-1231 (9th Cir. May 19, 2026); *United States v. Benson*, No. 25-cv-1148, 2026 WL 362789 (W.D. Mich. Feb. 10, 2026), *argued*, No. 26-1225 (6th Cir. May 12, 2026); *United States v. Galvin*, No. 25-cv-13816, 2026 WL 972129

1

(D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 25-cv-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, No. 2:26-cv-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026). Not a single court to consider the matter thus far has found that DOJ's complaints can survive. This Court should likewise dismiss the Amended Complaint and enter judgment for Defendants.

## BACKGROUND

I.    **Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional principles of federalism.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

The laws Congress has enacted governing existing "state voter-registration systems," *id.* at 5, confirm that states are the custodians of voter registration data. As relevant here, Congress enacted the NVRA in 1993 to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges states—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists (subject to strict safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 election, Congress enacted HAVA "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). HAVA requires states to create a "computerized statewide voter registration list." 52 U.S.C.

2

§ 21083(a)(1)(A). It also requires states to "perform list maintenance" consistent with the NVRA "on a regular basis." *Id.* § 21083(a)(2)(A). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the State level," *id.* § 21083(a)(1)(A), and commands that the "specific choices on the methods of complying with" HAVA "shall be left to the discretion of the State," *id.* § 21085. Indeed, HAVA's history stresses the importance of our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. **This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome.** This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001) (emphasis added).

Consistent with that principle, neither the NVRA nor HAVA authorizes the federal government to compile a national voter database. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the specific requirements of the NVRA and HAVA, which purposefully operate through the states themselves.

## II.    The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.

In the spring of 2025, DOJ launched an unprecedented campaign to demand broad access to state voter files including sensitive and personal information about each registered voter—information that many states, including Virginia, protect from disclosure. The vast majority of states that have received such demands have declined to turn over information that is typically

3

protected by state law.[1] In response, DOJ has now sued 30 states and the District of Columbia to compel the disclosure of that information.

DOJ's nationwide pressure campaign reached Virginia on July 15, 2025, when DOJ sent a letter to the then-Commissioner of the Virginia Department of Elections, Susan Beals. Am. Compl. ¶ 22, ECF No. 28. Citing the NVRA, the letter requested that the Commissioner provide a "current electronic copy of Virginia's computerized statewide voter registration list" including "all fields contained within the list." *Id.*; Mot. Compel Production of Records, Ex. 2 (the "July 15 letter"), ECF No 39-3.[2]

On August 14, DOJ sent another letter, this time demanding Virginia's statewide voter registration list under Title III of the Civil Rights Act. Am. Compl. ¶ 25; Mot. Compel Production of Records, Ex. 3 (the "August 14 letter"), ECF No. 39-4. Again, DOJ insisted it receive the list with "*all fields*" including "the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number." August 14 Letter, ECF No. 39-4; *see also* Am. Compl. ¶ 25. The purpose of the demand, as stated by DOJ in the letter, was to "ascertain Virginia's compliance with the list maintenance requirements of the NVRA and HAVA." Am. Compl. ¶ 26.

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (May 11, 2026), https://perma.cc/S66E-2EZ2; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

[2] The Court may consider the correspondence between DOJ and Defendant both because it is incorporated into and integral to the Complaint, and because it is subject to judicial notice. *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023) ("The Court may also consider documents attached to the complaint or incorporated by reference, including those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, and may take judicial notice of matters of public record.").

After "discussions in the months subsequent to the July 15 and August 14 Letters," on January 8, 2026, representatives for Commissioner Beals "expressed in person that she would not be providing" Virginia's statewide voter registration list. *Id.* ¶ 27. DOJ alleges that this decision came "[d]espite representations and commitments by members of" Governor Glenn Youngkin's administration to produce the list. *Id.*

### III.    The Department of Justice sues Virginia for its complete voter list.

DOJ filed this suit on January 16, 2026, seeking to compel Virginia to provide its full unredacted statewide voter registration list. *See generally* Compl., ECF No. 1. The Complaint named Commissioner Beals, in her official capacity, as the sole defendant. *Id.* ¶ 8. The next day, Governor Abigail Spanberger took office; she appointed Steven Koski to replace Beals as Commissioner. Am. Compl. ¶ 28.

On March 19, 2026, DOJ filed a materially similar amended complaint substituting Commissioner Koski as the defendant. *See id.*; *cf.* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). Like his predecessor, Commissioner Koski has not provided Virginia's unredacted statewide voter registration list to DOJ.

Although the Amended Complaint alleges that DOJ seeks Virginia's voter list data to investigate the state's compliance with the NVRA and HAVA, DOJ does not assert a claim under either statute. Am. Compl. ¶ 26.[3] Instead, DOJ asserts a solitary claim under Title III of the Civil

---

[3] Notably, DOJ previously asserted claims under the NVRA and HAVA in otherwise identical complaints that it brought against multiple states in September of last year. *See, e.g.*, Compl., *United States v. Pennsylvania*, No. 2:25-cv-01481-CB (W.D. Pa. Sep. 25, 2025), ECF No. 1. But in its following lawsuits seeking the same relief (including this one against Virginia), DOJ has abandoned those claims.

Rights Act of 1960, a law that permits DOJ to review certain voting "records and papers," 52 U.S.C. §§ 20701–20703, to facilitate investigations "concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962).

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true all of the allegations contained in a complaint" but need not accept the complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And the "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). If, "as a matter of law, the complaint lacks a cognizable legal theory, then dismissal is proper." *Newport News Indus. v. Dynamic Testing, Inc.*, 130 F. Supp. 2d 745, 749 (E.D. Va. 2001).

## ARGUMENT

DOJ's reliance on Title III to justify its sweeping demand fails for multiple independent reasons. *First*, by its plain text, Title III does not extend to the statewide registered voter lists that DOJ demands. *Second*, DOJ has not complied with the basic procedural requirements mandated by Title III; it has not provided Virginia with a factual "basis" for its demand nor a proper "purpose" under Title III. *Third*, Title III does not preempt Virginia's privacy protections for sensitive personal data. *Fourth*, DOJ's attempted collection and maintenance of this data violates the federal Privacy Act. Each of these deficiencies requires dismissal.

6

I.     **Virginia's statewide voter registration list is outside the scope of Title III.**

DOJ's demand fails at the outset because Virginia's statewide voter registration list is not a "record" or "paper" under the plain text of the CRA. 52 U.S.C. § 20701. The CRA's text covers only static records that must be "retained," "preserved," and not "altered." HAVA-required voter lists are not encompassed by that language, because they are dynamic databases that federal law requires to be continuously updated. *Id.* § 21083(a)(4). Further, the CRA only applies to records that "come into [the] possession" of election officials relating to a voter's "application, registration, payment of poll tax, or other act requisite to voting in such election." *Id.* § 20701. Since Virginia's statewide voter registration list was created by election officials, it is not a record that "came into" those officials' possession.

A.     **The CRA does not reach Virginia's voter registration list, which is required to be continually updated under HAVA.**

Title III requires a state officer of election to "*retain and preserve*, for a period of twenty-two months from the date of any [federal election] . . . all records and papers which *come into his possession* relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." *Id.* (emphases added). The CRA prohibits (and indeed criminalizes) the willful "alter[ing]" of any record subject to the "retain and preserve" requirement. *Id.* § 20702 (providing criminal penalties for "[a]ny person . . . who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701 of this title to be retained and preserved"). Thus, if a record does *not* need to be "retain[ed] and preserv[ed]," or if it *may* be "alter[ed]," it falls outside of the scope of the Title III.

Under a straightforward application of these provisions, Virginia's voter registration list is not a record subject to the CRA, because federal law *requires* it to be continually updated. Indeed, applying Title III to Virginia's voter registration list would create "conflict[] with the very purpose

7

of VRLs and would place Title III in conflict with . . . HAVA." *Fontes*, 2026 WL 1177244, at \*4. HAVA *commands* election officials to *continually* alter voter registration lists. It demands that "[a]ll voter registration information obtained by" election officials "be electronically entered into the computerized list on an expedited basis," 52 U.S.C. § 21083(a)(1)(A)(vi), and requires election officials to "perform list maintenance with respect to the computerized list on a regular basis," *id.* § 21083(a)(2)(A), and "ensure that voter registration records in the State are accurate and are updated regularly," *id.* § 21083(a)(4). Election officials cannot discharge these obligations while simultaneously "retain[ing] and preserv[ing]" the statewide voter registration list. *Id.* § 20701. The maxim that courts must "interpret Congress's statutes as a harmonious whole rather than at war with one another," *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018), thus requires giving the text of Title III its plain meaning: only externally produced documents that "come into [election officials'] possession" are subject to Title III.

Additional textual indicators in the CRA reinforce the conclusion that Title III extends only to materials submitted to election officials. Within the very same section of Title III, Congress used a different word—"delivered"—to describe the transmittal and acquisition of internal election records. 52 U.S.C. § 20701 ("such records and papers may be delivered to another officer of election"). Virginia's voter registration list, by contrast, is accessible to and maintained by all state and local election officials. *See id.* § 21083(a)(1)(A)(v)–(vi). Whereas static documents that follow a chain-of-custody from one official to another may need to be preserved under Title III's terms, Virginia's interactive VRL falls outside that scope.

Practical considerations also compel the conclusion that the voter registration list cannot be subject to Title III. If it were, and even if one ignored the CRA's prohibition on "alter[ing]" the list, Virginia would be required to "retain and preserve" every iteration of the list whenever it

8

changes. But that would be unworkable. To do so, Virginia would need to save a copy of the voter list whenever a name is removed (such as when someone moves out of state, dies, or loses voting rights upon incarceration), whenever a name is added (such as when someone moves into the state or reaches voting age and registers), or any time Virginia updates any data in the list to reflect new information about any individual voter (such as a change of address, an updated driver's license number, or a person's vote history). In a large state like Virginia (with a population of nearly nine million people), there will be enormous numbers of such changes every year. It simply is not plausible to conclude that Virginia election officials are required (with criminal penalties for willful violations) to "preserve" every version of the voter registration list when it is subject to such a vast number of changes.

**B.** **The statewide voter registration list was created by Virginia election officials and thus did not "come[] into [their] possession."**

Virginia's voter list is a digital record created and maintained by the state—it thus does not "come into the possession" of Commissioner Koski. The phrase "come into his possession" "naturally refers to a process by which someone *acquires* an item from an external source." *Benson*, 2026 WL 362789, at *9; *see also Fontes*, 2026 WL 1177244, at *3 (quoting *Benson*). This follows from the "natural" and "ordinary" meaning of "come into possession." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004); *see Receive, Black's Law Dictionary* (12th ed. 2024) (defining "receive" as "to come into possession of or get from some outside source"); *Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (defining "obtain" as "to come into possession of" (quoting *Random House Dictionary of the English Language* 995 (1966))); *Huddleston v. United States*, 415 U.S. 814, 820 (1974) ("The word 'acquire' is defined to mean simply 'to come into possession, control, or power of disposal of.'" (quoting *Webster's New International Dictionary* (3d ed. 1966, unabridged))). This reading of Title III is buttressed by the "obvious alternative" language Congress had available

9

to it. *Union Pac. R.R. Co. v. United States*, 865 F.3d 1045, 1050 (8th Cir. 2017). Congress could have, for instance, written Title III to cover papers and records "*in* the possession" of election officials, or simply "all records" without qualification, as it did in the NVRA. *See* 52 U.S.C. § 20507(i)(1). But—consistent with the purpose of Title III to investigate denials of the right to vote, *see infra* § II.B—Congress instead chose to limit Title III to documents like voter registration applications that "come into possession" of election officials.

## II.    DOJ did not state an adequate basis and purpose for its demand.

Governmental agencies are "not afforded unfettered authority to cast about for potential wrongdoing." *CFPB v. Accrediting Council for Indep. Colls. & Schs.* ("*ACICS*"), 854 F.3d 683, 689 (D.C. Cir. 2017) (citation modified). An agency's authority to demand documents and information "is a creature of statute," *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018), and, as such, it "must comply with statutory requirements," *id.* at 460. If an agency fails to follow the relevant statutory prerequisites for issuing a demand for information, courts must decline to order enforcement. *See, e.g.*, *ACICS*, 854 F.3d at 690; *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (holding courts must quash demands that "exceed the investigatory power" of a federal agency).

DOJ failed to comply with a fundamental statutory requirement in demanding the data it seeks here: Title III requires that a demand for records "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. As a matter of plain text and as recently confirmed by multiple federal courts, that provision means "DOJ is required to offer a written statement of *both* the purpose and basis for its demands." *Weber*, 816 F. Supp. 3d at 1182; *Oregon*, 2026 WL 318402, at *9; *Galvin*, 2026 WL 972129, at *4; *Amore*, 2026 WL 1040637, at *5–6; *see also United States v. Wayda*, 966 F.3d 294, 307 (4th Cir. 2020) ("[I]t is well-settled that courts should disfavor interpretations of statutes that render language superfluous." (citation modified). And the "basis"

10

is "the *factual* [not legal] basis giving rise to the demand for records." *Galvin*, 2026 WL 972129, at *5.

Title III's basis and purpose requirement "is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Weber*, 816 F. Supp. 3d at 1184. Courts regularly quash records demands when DOJ seeks to assert statutory authority for investigations "far removed from those claimed purposes granted by Congress." *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 577, 583 (E.D. Pa. 2025) (striking DOJ subpoena that "invoke[d] sweeping" demands for information that had "no relevance to the investigation Congress permitted or to the investigation the [DOJ] tells the world it is pursuing"); *see also In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting the notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"), *appeal docketed*, No. 26-1093 (1st Cir. Jan. 30, 2026).

The principal authority that DOJ cites in its Amended Complaint confirms that DOJ knows how to comply with this statutory requirement (and historically has complied with it) but simply failed to do so here. *See* Am. Compl. ¶ 1. In *Kennedy v. Lynd*, the "basis" of DOJ's demand was "information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction," and the "purpose" was "to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred." 306 F.2d at 229 n.6 (citation modified).[4] Other Title III cases from that period likewise indicate that

---

[4] In several parallel cases and this one, DOJ has relied on *Lynd* to argue that its demand is not subject to the Federal Rules of Civil Procedure. *See, e.g.,* Mem. Supp. Mot. Compel Production of

the DOJ's demand included an explicit statement of both a "basis" and "purpose." *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (per curiam). Here, DOJ's demand was deficient on both fronts. *See Source for Pub. Data*, 903 F.3d at 460.

### A.     DOJ failed to provide any "basis" for its demand.

DOJ's demand letter failed entirely to articulate any "basis" for its demand. DOJ did not invoke Title III until its August 14 letter, which is therefore the only document that could serve as the requisite CRA demand. 52 U.S.C. § 20703; Am. Compl. ¶¶ 29–30 ("On August 14, 2025, the Attorney General sent a written demand to Defendant Commissioner of the Virginia Department of Elections for the production of specific election records pursuant to 52 U.S.C. § 20703."). The August 14 letter explained that "[t]he *purpose* of the request is to ascertain Virginia's compliance with the list maintenance requirements of the NVRA and HAVA," Am. Compl. ¶ 26 (emphasis added); August 14 Letter, ECF No. 39-4. But the Amended Complaint is silent as to the "basis" articulated in the letter, and none can be ascertained from the letter itself. *See* August 14 Letter, ECF No. 39-4. While DOJ now claims that the basis for its demand is Title III itself, Mem. Supp. Mot. Compel Production of Records at 2, ECF No. 39-1, a demand letter requires, as another court observed, the "factual (not merely legal) basis." *Galvin*, 2026 WL 972129, at *5 (citing *Lynd*, 306

---

Records, Ex. 1 at 5, ECF No 39-1. This is wrong. *Lynd* was never binding on this Court, and has not been good law on this point even in the Fifth Circuit for over 60 years. Two years after the Fifth Circuit decided *Lynd*, the Supreme Court rejected its suggestion that demands under statutes like Title III are insulated from judicial review. In *United States v. Powell*, 379 U.S. 48 (1964), the Court considered a statute that—using language identical to that in Title III—confers jurisdiction on district courts "by appropriate process to compel" compliance with federal document demands. *Id.* at 52 n.10 (citation omitted). The Court concluded that, because the statute did not specify any other "appropriate process," "the Federal Rules . . . apply," and courts may "inquire into the underlying reason[] for" the demand. *Id.* at 52, 58 & n.18. Thus, *Powell* "squarely rejects" *Lynd*'s reasoning. *Oregon*, 2026 WL 318402, at *8 n.1 (noting DOJ failed to cite *any* binding authority that supports its position "nor even any cases which apply *Lynd* . . . within the last sixty years").

12

F.2d at 229 n.6); *see also id.* at *3 ("'[T]he basis . . . therefor' is the 'foundation' or 'chief supporting factor' 'for' the demand.") (alterations in original) (citing Webster's New World Dictionary of American Language 122, 1515 (college ed. 1959)); *Oregon*, 2026 WL 318402, at *9 ("Reading 'basis' in the way Plaintiff suggests collapses its meaning with that of 'purpose.'"). And as that same court observed about a similar letter that DOJ sent Massachusetts the same day, "[t]he August 14 letter contains nothing that could fairly be characterized as the factual basis for the demand." *Galvin*, 2026 WL 972129, at *4. This failure requires dismissal of the Amended Complaint. *See id.* ("Here, the Attorney General offered no basis—none—and the demand was therefore facially inadequate."); *Oregon*, 2026 WL 318402, at *9 (similar).

The July 15 letter cited in the Amended Complaint cannot fix this fatal flaw for two reasons. First, Title III does not permit DOJ to cobble together a "statement of the basis and purpose" from an assortment of separate documents issued on separate dates. Congress was unequivocal: "*This demand*"—*i.e.*, the August 14 letter—"shall contain *a* statement of the basis and the purpose therefor." 52 U.S.C. § 20703 (emphases added). In *Niz-Chavez v. Garland*, the Supreme Court held that similar statutory instructions, including "Congress's decision to use the indefinite article 'a' . . . suggests that the government must issue a single statutorily compliant document." 593 U.S. 155, 163 (2021). That means DOJ needs to identify "a single document containing the required information, not a mishmash of pieces with some assembly required." *Id.* at 161 (internal quotation marks omitted).

Second, even if the Court were to ignore the statute's text and consider the letters together, the July 15 letter concerning Virginia's "procedures for complying with" NVRA did not articulate *any* factual basis to conclude that Virginia's list-maintenance efforts may not be "reasonable" as required by the NVRA and HAVA. 52 U.S.C. §§ 20507(a)(4), 21083(a)(4), 21085 (committing

13

"specific choices on the methods of complying with" HAVA "to the discretion of the State"); *see* July 15 Letter, ECF No. 39-3.[5] "Simply put, [DOJ's demand] does not identify what conduct, it believes, constitute[d] an alleged violation." *Source for Pub. Data*, 903 F.3d at 458–59 (quashing civil investigative demand that failed to provide basis for investigation); *see also Oregon*, 2026 WL 318402, at *9 (dismissing because demand letter "contain[ed] no statement of a factual basis"); *Weber*, 816 F. Supp. 3d at 1184 (finding DOJ failed to "establish[] the basis for its request" because it failed to explain why it believed that California may have violated the NVRA or why its investigation required the unredacted voter registration list).

It is not surprising that DOJ failed to state any factual basis for its investigation of Virginia—DOJ has made carbon copy demands to at least 40 States and has sued more than two dozen based on nearly identical boilerplate claims and allegations. *See* Martinez-Ochoa et al., *supra* note 1. This nationwide effort to collect state voter registration lists undermines any notion that DOJ has a "basis" for investigating Virginia specifically.

### B.       DOJ's purported "purpose" is beyond the scope of Title III.

DOJ's Amended Complaint also must be dismissed because its stated purpose for issuing the demand—"to ascertain Virginia's compliance with the list maintenance requirements of the NVRA and HAVA," Am. Compl. ¶ 26 (internal quotation marks omitted) (quoting August 14 demand letter); *see also id.* ¶¶ 9, 22—is not a permissible purpose for *the CRA*'s inspection provision, which Congress enacted to aid DOJ in the enforcement of civil rights laws—specifically

---

[5] DOJ's July 15 letter asks a number of questions about Virginia's responses to the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). *See* July 15 Letter, ECF No. 39-3. DOJ's Amended Complaint does not allege that these questions provide any basis to believe that Virginia violated the NVRA or HAVA or infringed anyone's voting rights. And although DOJ belatedly suggests these EAVS responses provided "context" and "explanation" for the August 14 letter, Mem. Supp. Mot. Compel Production of Records at 16, ECF No 39-1, DOJ does not argue these provided a sufficient "basis" for the demand, and rightly so given the incongruity between the responses and the NVRA, HAVA, and the CRA.

14

the Civil Rights Act of 1957. In interpreting the "purpose" requirement contained in Title III, courts should "account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Title III of the CRA does not grant capacious federal power to demand state voter rolls at any time and for any reason unrelated to the goals of the CRA. Congress "does not . . . hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001); *see also Amore*, 2026 WL 1040637, at *6 ("Congress cannot have intended Title III as permitting such a demand based on a statement of *any* purpose.").

Congress enacted Title III to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant Southern state and local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 7 (1959). This history "leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote," that is, "regardless of color, race, religion, or national origin." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853–54 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). Accordingly, Title III's "purpose is to enable the Attorney General to determine whether [§10101] suits or similar actions should be instituted." *Lynd*, 306 F.2d at 228. "It is not the purpose of title III to supervise State elections." *Hearings on Miscellaneous Bills Regarding the Civil Rights of Persons Within the Jurisdiction of the United States*: *Hearings Before Subcomm. No. 5 of the H. Comm. on the Judiciary*, 86th Cong. 700 (1959) (statement of Rep. William M. McCulloch, a principal drafter of Title III). Rather, the "purpose of Title III" is to preserve records for cases where "reasonable cause is thought to exist that any person qualified

15

to vote has been improperly denied that right." *Id.*; *see also id.* at 599 (Attorney General Rogers explaining Title III is meant to facilitate investigations into "complaints that qualified persons have been denied the right to vote in violation of Federal law"); 106 Cong. Rec. 5086 (1960) (Statement of Sen. Saltonstall) (explaining Title III "requires the preservation of voting records and gives the Justice Department power to inspect them in enforcing the 1957 act"); H.R. Rep. No. 86-956, at 11, 38 (documenting Attorney General's request for document preservation and inspection provisions).

If Congress wanted to grant DOJ broad access to voter files to investigate potential violations of the NVRA and HAVA, it would have done so in those statutes. But HAVA has no disclosure requirements at all. And while the NVRA grants DOJ (and every other member of the public) the right to inspect records relating to the implementation of programs and activities related to list maintenance, courts including the Fourth Circuit have held that the specific information DOJ seeks here—the fields containing sensitive personal information protected by federal and state law—may be redacted consistent with the NVRA. *See Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 265 (4th Cir. 2021) (citing *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012)); *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).[6] No doubt for these reasons, DOJ is not pressing claims under the NVRA or HAVA in this case. But DOJ cannot circumvent the strictures of statutes *specifically designed to address list maintenance* by invoking the general disclosure provision of the CRA. To hold otherwise would violate the "well established canon of statutory interpretation . . . that the specific governs the

---

[6] The Ninth Circuit has recently taken this reasoning a step further, finding that "statewide voter lists are not themselves 'records' that must be disclosed," with or without redactions. *Pub. Int. Legal Found., Inc. v. Nago*, No. 24-6629, 2026 WL 1144703 (9th Cir. Apr. 28, 2026).

general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (internal quotation marks and citation omitted). DOJ must be limited to the investigatory tools Congress has granted it.

Even if ascertaining Virginia's compliance with the NVRA and HAVA were permissible grounds for invoking Title III to obtain the state's voter registration list generally, "DOJ states no reason why an *unredacted* version of [Virginia's] voter list is necessary" for its purported purpose. *Weber*, 816 F. Supp. 3d at 1183 (emphasis added); *see Oregon*, 2026 WL 318402, at *10 n.4. Statewide voter registration lists are regularly updated by state election officials, and thus any single snapshot obtained by DOJ would become outdated almost immediately. Such a snapshot— with or without fields containing sensitive personal information—cannot tell DOJ anything about list maintenance *procedures*. And both the NVRA and HAVA grant states broad discretion in setting their list maintenance procedures: The NVRA requires only that such procedures be "reasonable," 52 U.S.C. § 20507(a)(4), and HAVA explicitly commits "specific choices . . . to the discretion of the State," *id.* § 21085. DOJ has failed to explain why it requires the sensitive information it seeks: "neither Plaintiff's Title III demand nor any of its pleadings before this Court provide any reasonable explanation for why the Sensitive Voter Data in particular serves those purposes." *Oregon*, 2026 WL 318402, at *10 n.4.

In short, DOJ's stated purpose "lack[s] any reference or relation to the purposes for which Title III was enacted," *Id.* at *10; *see also Amore*, 2026 WL 1040637, at *6 (same), and it is, in fact, antithetical to Title III's purpose, *see Weber*, 816 F. Supp. 3d at 1182–84. The Court should reject DOJ's efforts to justify its demands with a purpose so disconnected from the Civil Rights Act purportedly authorizing it. *See In re Subpoenas*, 692 F. Supp. 2d 602, 604 (W.D. Va. 2010) ("[A] subpoena must be issued for a legitimate and authorized governmental purpose," which

"prohibits the government from engaging in arbitrary fishing expeditions." (citation modified));
*see also United States v. Newport News Shipbuilding & Dry Dock Co.*, 837 F.2d 162, 165 (4th Cir.
1988).

**III.     Title III does not preempt Virginia privacy laws.**

DOJ's demand for Virginia's unredacted voter list would violate protections for voters'
sensitive information under Virginia law. Virginia law specifies that "[n]o list provided by the
Department [of Elections]" or "made available for public inspection" shall contain "an individual's
social security number, or any part thereof" or "the day and month of birth of an individual." Va.
Code Ann. § 24.2-444(C); *see also id.* § 24.2-405(C) (providing that, aside from inapplicable
exceptions, "[i]n no event" may state officials disclose lists of voters that "contain the social
security number, or any part thereof, of any registered voter"). To access this information DOJ
must show that Title III preempts Virginia's privacy protections. It does not.

Because Title III contains no express preemption provision, *see* 52 U.S.C. § 20703, DOJ's
argument must rest on the notion that Virginia's privacy protections *impliedly* conflict with Title
III, *see generally Atl. Coast Pipeline, LLC v. Nelson Co. Bd. of Supervisors*, 443 F. Supp. 3d 670
(W.D. Va. 2020) (discussing express versus implied preemption). "[P]re-emption fundamentally
is a question of congressional intent." *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 270 (4th Cir.
2025) (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990)). "At times, the intent to
displace state law arises only by implication, either because Congress has so thoroughly regulated
a field that any state regulation frustrates the national policy or, more likely, because the
application of state law poses a conflict to the specific aims of a federal statute." *Air Evac EMS,
Inc. v. Cheatham*, 910 F.3d 751, 761 (4th Cir. 2018).

Here, there is no evidence that Congress intended for Title III to preempt state privacy laws
that protect highly sensitive information. Virginia's privacy laws are entirely consistent with the

18

national policy and specific aims expressed in Title III and the NVRA. In the principal case DOJ

cites in its Amended Complaint, the Fifth Circuit explained that Title III is intended to reach *only*

"public records which ought ordinarily to be open to legitimate reasonable inspection," and *not*

"confidential, private papers and effects." *Lynd*, 306 F.2d at 231. The information that DOJ seeks

here is not of the type ordinarily open to legitimate reasonable inspection; instead, DOJ demands

sensitive information that enjoys strong privacy protection under both federal and State law. *See*

*Weber*, 816 F. Supp. 3d at 1183 (recognizing that this "sensitive and identifying information is

private and not open to inspection by federal officials").

Further confirmation that Title III does not preempt Virginia's privacy protections is found

in the judicial consensus, including in the Fourth Circuit, that the NVRA's disclosure provision

does *not* preempt State laws protecting the same highly sensitive categories of information that

DOJ seeks here. *See supra* Argument II.B; *see N.C. State Bd. of Elections,*, 996 F.3d at 268

(recognizing the NVRA permits redactions to "protect sensitive information"); *Project*

*Vote/Voting for Am., Inc.*, 682 F.3d at 339 (affirming district court order to redact social security

numbers before disclosure under NVRA).[7] Title III and the NVRA employ very similar language

---

[7] Every other circuit court to reach this issue has agreed, and so have many more district courts. *See Voter Reference Found.*, 160 F.4th at 1083 n.14 ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation."); *Bellows*, 92 F.4th at 56 ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); *see also Weber*, 816 F. Supp. 3d at 1188 (rejecting DOJ's NVRA claim asserted in earlier waves of its voter roll litigation campaign); *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 446 (D. Md. 2019) (ordering disclosure of records "subject to compliance with the relevant State law"); *Pub. Int. Legal Found., Inc. v. Boockvar*, 431 F. Supp. 3d 553, 561 n.3 (M.D. Pa. 2019) (noting NVRA "does not guarantee unfettered access to confidential sensitive information"); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social

to require disclosure of certain records relating to voter registration. *Compare* 52 U.S.C. § 20703 (providing in Title III that covered voting records held by a State election official "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with id.* § 20507(i)(1) (providing in the NVRA that States "shall make [covered voting records] available for public inspection"). It makes no sense to suggest that Congress intended Title III to preempt state privacy laws protecting highly sensitive voter data so that the federal government can assess compliance with voter list maintenance under the NVRA, when the NVRA reflect a congressional judgment *not* to preempt state privacy laws.

## IV.    DOJ's failure to comply with the federal Privacy Act also requires dismissal.

The Amended Complaint must be dismissed for the additional reason that DOJ has failed to comply with the Privacy Act in its effort to amass huge amounts of sensitive data. The Privacy Act, codified at 5 U.S.C. § 552a *et seq.*, "offers substantial protection[] regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). It does so in part by "adopt[ing] procedural safeguards when the records maintained by a federal agency, *i.e.*, a 'system of records,' are changed or used in a new way." *Id.* at *2 (quoting 5 U.S.C. § 552a(a)(5), (e)). Congress enacted the Privacy Act with "a growing awareness that governmental agencies were accumulating an ever-expanding stockpile of information about private individuals that was readily susceptible to both misuse and the perpetuation of inaccuracies." *Londrigan v. FBI*, 670 F.2d 1164, 1169 (D.C. Cir. 1981). These concerns persist today and specifically for NAACP

---

security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding NVRA permits redacting social security numbers).

Intervenors, who staunchly oppose disclosure of their sensitive data to DOJ, particularly in the current political climate. *See* Mem. Supp. Mot. Intervene at 8–10, ECF No. 7.

The Privacy Act imposes obligations on any agency that "maintains" a "system of records." 5 U.S.C. § 552a(e). A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual"). Virginia's statewide voter registration list, which contains the names of all registered voters as well as their voter registration identifiers and other identifying information, plainly qualifies as a "system of records" under the Privacy Act. *Cf.* Am. Compl. at 8 (demanding statewide voter registration list "with all fields, including each registrant's full name, date of birth, residential address, and either their Driver's License number, the last four digits of their Social Security number, or HAVA unique identifier"). The term "maintain" is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" Virginia's statewide voter registration list, the obligations imposed by subsection (e) are triggered. *See id.* § 552a(e)(4); *see also Weber*, 816 F. Supp. 3d at 1193 (holding that "[t]he Privacy Act applies to the voter records request by the DOJ"). And that is precisely the relief DOJ seeks here: to collect Virginia's statewide voter list. *See* Am. Compl. at 8.

Most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *League of Women Voters*, 2025 WL 3198970,

21

at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)); *see also League of United Latin Am. Citizens v. Exec. Off. of the President*, 818 F. Supp. 3d 34, 116 (D.D.C. 2026) (entering declaratory judgment against federal government and noting that "the Court has serious concerns that DHS and SSA may each have been violating the Privacy Act in significant ways" before publishing SORN), *appeal docketed*, No. 26-5102 (D.C. Cir. Apr. 2, 2026). An adequate SORN must include, among other things, the name and location of the system, the categories of individuals on whom records are maintained in the system, the categories of records maintained in the system, and all "routine uses" to which the system can be put as well as the "categories of users and the purpose of such use." *League of Women Voters*, 2025 WL 3198970, at *2. The Privacy Act further requires that DOJ adhere to strict notice-and-comment requirements, by first providing "adequate advance notice" to two congressional committees and the Office of Management and Budget to evaluate the effects on privacy and other rights, and only then publishing a SORN in the Federal Register that accurately discloses the system of records it intends to create and the uses to which it will put that information. *See* 5 U.S.C. § 552a(e)(4), (e)(11), (r).

DOJ appears to understand that the Privacy Act applies here: it stated in its July 15 letter that "the SVRL and all other federal election records . . . would be maintained according to all applicable federal laws, including . . . the Privacy Act." Am. Compl. ¶ 23.[8] But, unlike in some of

---

[8] That HAVA exempts "[t]he last [four] digits of a social security number" from "section 7 of the Privacy Act of 1974," 52 U.S.C. § 21083(c), is of no avail here. *Contra* Am. Compl. ¶ 23. Section 7 of the Privacy Act only provides that: "It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number." 5 U.S.C. § 552a note. DOJ's demand remains subject to the Privacy Act's rigorous procedural requirements for the collection, maintenance, and use of the sensitive voter information it seeks here, including social security and driver's license numbers.

its parallel cases, DOJ fails to identify *any* authorizing SORN here, let alone acknowledge that it must publish one that would apply to Virginia's statewide voter registration list.[9]

If DOJ wishes to collect the information it demands from Virginia, the Privacy Act requires at a minimum that DOJ give the public adequate notice by publishing a SORN that accurately discloses the system of records it intends to create and the uses to which it will put that information. *See Pippinger v. Rubin*, 129 F.3d 519, 527 (10th Cir. 1997) (noting that Privacy Act "requir[es] publication of the establishment and existence of a government-maintained 'system of records'" and that agencies "publish in the Federal Register notice of revisions in the *character* of existing systems of records"); *see also* 5 U.S.C. § 552a(e)(4), (11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency"). Because no published SORN covers the system of records DOJ intends to maintain, the Privacy Act prohibits DOJ from collecting Virginians' sensitive personal information, providing an additional reason to dismiss DOJ's complaint. *See Weber*, 816 F. Supp. 3d at 1192–94.[10]

## **CONCLUSION**

NAACP Intervenors respectfully request that the Court grant their motion to dismiss.

---

[9] *See, e.g.*, Compl. ¶ 41, *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. Sep. 25, 2025), ECF No. 1 (citing Privacy Act of 1974; System of Records, 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003); Privacy Act of 1974; System of Records, 70 Fed. Reg. 43904 (July 29, 2005); Privacy Act of 1974; System of Records, 82 Fed. Reg. 24147 (May 25, 2017)); Compl. ¶ 25, *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025), ECF No. 1 (citing same three SORNs).

[10] Even if the Court construes these arguments as an affirmative defense, a "court may dismiss a complaint under Rule 12(b)(6) 'if all facts necessary to the affirmative defense clearly appear on the face of the complaint.'" *Sanchez v. Arlington Cnty. Sch. Bd.*, 563 F. Supp. 3d 484, 487 (E.D. Va. 2021) (emphasis omitted) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)), *aff'd*, 58 F.4th 130 (4th Cir. 2023). And such is the case here, where it is clear DOJ has failed to comply with the requirements of the Privacy Act.

Dated: May 19, 2026

Respectfully submitted,

*/s/ Aria C. Branch*
Aria C. Branch, VSB #83682
Richard A. Medina, DC Bar No. 90003752*
Kevin R. Kowalewski, NY Bar No. 5946645*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
abranch@elias.law
rmedina@elias.law
kkowalewski@elias.law

Walker R. McKusick, WA Bar No. 63205*
**ELIAS LAW GROUP LLP**
T: (206) 656-0177
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
wmckusick@elias.law

* Admitted *Pro Hac Vice*

*Counsel for NAACP Intervenors*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 19th day of May, 2026, with a copy of this document via the Court's CM/ECF system.

/s/ *Aria C. Branch*
Aria C. Branch, VSB #83682
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
abranch@elias.law

*Counsel for NAACP Intervenors*

25