# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>STEVEN KOSKI, in his Official Capacity as Commissioner of the Virginia Department of Elections,<br><br>        Defendant. | No. 3:26-cv-00042-RCY |

## NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE AND NAACP VIRGINIA STATE CONFERENCE'S RESPONSE IN OPPOSITION TO MOTION TO COMPEL

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................1

BACKGROUND .............................................................................................................2

ARGUMENT ...................................................................................................................3

I.      As other courts have held, the Federal Rules govern DOJ's claim. ...............................3

II.     The Court must conduct a meaningful review of DOJ's Title III demand. ....................6

III.    The proper procedural course is to first resolve the pending motions to dismiss and
        then, if needed, proceed to discovery. ...................................................................11

IV.     The flawed merits arguments folded into DOJ's motion illustrate the procedural
        impropriety of this "motion to compel." ................................................................15

CONCLUSION ...............................................................................................................17

# TABLE OF AUTHORITIES

**Case(s)**                                                                                    **Page(s)**

*Alabama ex rel. Gallion v. Rogers,*
  187 F. Supp. 848 (M.D. Ala. 1960) ...................................................................... 8

*Becker v. United States,*
  451 U.S. 1306 (1981).................................................................................. 10, 11

*Califano v. Yamasaki,*
  442 U.S. 682 (1979).......................................................................................... 5

*CFPB v. Accrediting Council for Indep. Colls. & Schs.,*
  854 F.3d 683 (D.C. Cir. 2017)............................................................................ 7

*CFPB v. Source for Pub. Data, L.P.,*
  903 F.3d 456 (5th Cir. 2018) ............................................................................. 7

*Donaldson v. United States,*
  400 U.S. 517 (1971)...................................................................................... 10, 11

*Edwards v. City of Goldsboro,*
  178 F.3d 231 (4th Cir. 1999) ........................................................................... 11

*EEOC v. Univ. of Pa.,*
  850 F.2d 969 (3d Cir. 1988)............................................................................... 7

*Fernandez v. Antczak,*
  No. 2:23-cv-01149, 2023 WL 12204881 (E.D. Pa. Oct. 23, 2023) ...................................... 15

*Fifth Third Bancorp v. Dudenhoeffer,*
  573 U.S. 409 (2014)......................................................................................... 11

*Francis v. Giacomelli,*
  588 F.3d 186 (4th Cir. 2009) ........................................................................... 11

*Gahagan v. USCIS,*
  911 F.3d 298 (5th Cir. 2018) ............................................................................. 6

*Groder v. United States,*
  816 F.2d 139 (4th Cir. 1987) ........................................................................... 14

*Hintze v. IRS,*
  879 F.2d 121 (4th Cir. 1989) ........................................................................... 14

*In re Admin. Subpoena No. 25-1431-019,*
  800 F. Supp. 3d 229 (D. Mass. 2025) .................................................................. 7

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) .......................................................................................... *passim*

*League of United Latin Am. Citizens v. Exec. Office of the President*,
818 F. Supp. 3d 34 (D.D.C. 2026) ........................................................................................ 13

*N.H. Fire Ins. Co. v. Scanlon*,
362 U.S. 404 (1960) ................................................................................................................ 5

*Pledger v. Lynch*,
5 F.4th 511 (4th Cir. 2021) ................................................................................................... 15

*QueerDoc, PLLC v. DOJ*,
807 F. Supp. 3d 1295 (W.D. Wash. 2025) ............................................................................ 14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ................................................................................................................ 6

*Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*,
584 F.3d 340 (1st Cir. 2009) .................................................................................................. 7

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
288 F.R.D. 282 (S.D.N.Y. 2012) ......................................................................................... 15

*United States v. Amore*,
No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) ......................................... 2, 4, 8

*United States v. Bellows*,
No. 1:25-cv-00468, 2026 WL 1430481 (D. Me. May 21, 2026) .................................... *passim*

*United States v. Benson*,
819 F. Supp. 3d 753 (W.D. Mich. 2026) ...................................................................... 2, 4, 8, 16

*United States v. Fontes*,
No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) .................................. 2, 4, 6

*United States v. Galvin*,
No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ..................................... 2, 4, 7

*United States v. Lynd*,
301 F.2d 818 (5th Cir. 1962) .................................................................................................. 9

*United States v. Morton Salt Co.*,
338 U.S. 632 (1950) ................................................................................................................ 7

*United States v. Oregon*,
No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ......................................... *passim*

*United States v. Powell*,
379 U.S. 48 (1964)..................................................................................................*passim*

*United States v. Richards*,
631 F.2d 341 (4th Cir. 1980) ................................................................................... 7

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026) .............................................................*passim*

*United States v. Wis. Elections Comm'n*,
No. 25-cv-1036, 2026 WL 1430354 (W.D. Wis. May 21, 2026)............................... 2, 4, 8, 16

**Federal Statutes**

5 U.S.C. § 552a ................................................................................................... 14

26 U.S.C. § 7402 .................................................................................................. 1

29 U.S.C. § 161 .................................................................................................... 4

52 U.S.C. § 20703 ................................................................................................ 6

52 U.S.C. § 20705 ................................................................................................ 1, 4

**Federal Rules**

Fed. R. Civ. P. 1 ................................................................................................... 1, 3

Fed. R. Civ. P. 81 ................................................................................................. 3, 4

**Other Authorities**

AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 a.m. ET),
https://x.com/AAGDhillon/status/2001659823335616795...................................... 12

Devin Bartlett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html........................................................................................ 12

Exec. Order No. 14,399, 91 Fed. Reg. 17125 (Mar. 31, 2026)................................... 13

Louis L. Jaffe, *The Judicial Enforcement of Administrative Orders*, 76 Harv. L. Rev. 865 (1963) .................................................................................................................. 10

Mariana Alfaro, *Trump Wants to "Nationalize the Voting," Seeking to Grab States' Power*, Wash. Post (Feb. 3, 2026), https://www.washingtonpost.com/politics/2026/02/02/trump-elections-nationalize-fraud ............................................................................................ 13

Nick Corasaniti, *Why is the Trump Administration Demanding Minnesota's Voter Rolls?*, N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-rolls.html ........................................................................................................ 13

Perry Stein, Patrick Marley & Isaac Arnsdorf, *DOJ Struggles as White House Presses on Voter Fraud*, Wash. Post (Feb. 20, 2026), https://www.washingtonpost.com/politics/2026/02/20/trump-voting-fraud-justice-department/ ............................................................................................................ 13

**INTRODUCTION**

The Federal Rules of Civil Procedure lay out the appropriate process for a civil action: Start with Rule 12 motions and then—if the plaintiff states a claim and establishes jurisdiction—proceed to discovery, summary judgment, and trial if necessary. That process offers the defendant multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build a factual record for the Court. And the Federal Rules provide familiar governing standards for the Court to apply at each step, all with an eye toward orderly, efficient, and transparent resolution of disputes based on a robust adversarial system in full view of the public.

The U.S. Department of Justice ("DOJ") asks this Court to sweep all that aside and instead put the onus on Defendants to resist a "motion for order to compel records." ECF No. 39 at 1. In doing so, DOJ asks the Court to bypass the safeguards built into the Rules and immediately grant DOJ the final relief sought in the Amended Complaint. But that is not how civil litigation works. Nothing in the Federal Rules or Title III of the Civil Rights Act of 1960—which is the *only* authority DOJ cites for its claim here—authorizes a "special statutory proceeding," or permits DOJ to short-circuit the Rules and avoid motions to dismiss under Rule 12. *Contra* DOJ Mem. Supp. Mot. Compel 6 ("DOJ Mem."), ECF No. 39-1. The Civil Rights Act merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. The Federal Rules set forth that process. *See* Fed. R. Civ. P. 1. In *United States v. Powell*, 379 U.S. 48, 57–58 & n.18 (1964), the U.S. Supreme Court interpreted *a statute that said exactly this* involving federal demands for records. *See* 26 U.S.C. § 7402(b). It held that "the Federal Rules of Civil Procedure apply," and courts may "inquire into the underlying reasons for" the government's demand. *Powell*, 379 U.S. at 58 & n.18. The case that DOJ relies on, *Kennedy v.*

1

*Lynd*, 306 F.2d 222 (5th Cir. 1962), is both out-of-circuit and distinguishable, but it also predated *Powell*, and thus is no longer good law, even in the Fifth Circuit.

A total of *eight* federal courts have now rejected DOJ's arguments in parallel cases and dismissed DOJ's essentially identical claims.[1] This Court should do the same and deny the motion to compel.

## BACKGROUND

DOJ filed this suit to compel the Commissioner of the Virginia Department of Elections—originally Susan Beals, now Defendant Steven Koski—to turn over Virginia's full, unredacted statewide voter list. *See generally* Am. Compl., ECF No. 28. DOJ's amended complaint asserts a single claim under Title III of the CRA. *See id.* ¶¶ 29–31. DOJ contends that it is entitled to this sensitive data under the CRA for the alleged purpose of assessing Virginia's compliance with two other statutes: the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). *See id.* ¶ 22; *see also* Aug. 14, 2025 Letter, ECF No. 39-4.

Months after initially bringing this litigation, and just days before the original deadline to respond to the amended complaint, DOJ filed a motion styled as a "motion to compel," asking the Court to immediately "[o]rder Commissioner Koski to provide to the Attorney General the current electronic copy of Virginia's computerized voter registration list," including all the sensitive fields

---

[1] *See United States v. Weber*, 816 F. Supp. 3d 1168, 1182 (C.D. Cal. 2026), *argued*, No. 26-1232 (9th Cir. May 19, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402, at *8 (D. Or. Feb. 5, 2026), *argued*, No. 26-1231 (9th Cir. May 19, 2026); *United States v. Benson*, 819 F. Supp. 3d 753, 770 (W.D. Mich. 2026), *argued*, No. 26-1225 (6th Cir. May 12, 2026); *United States v. Galvin*, No. 1:25-cv-13816, 2026 WL 972129, at *6 (D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 25-cv-00639, 2026 WL 1040637, at *3–4 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, No. 2:26-cv-00066, 2026 WL 1177244, at *1 & n.1 (D. Ariz. Apr. 28, 2026); *United States v. Bellows*, No. 1:25-cv-00468, 2026 WL 1430481, at *10 (D. Me. May 21, 2026); *United States v. Wis. Elections Comm'n*, No. 25-cv-1036, 2026 WL 1430354, at *5 (W.D. Wis. May 21, 2026).

DOJ demands.[2] ECF No. 39 at 2; *see also* DOJ Mem. In other words, DOJ asks this Court to ignore the deficiencies that make DOJ's complaint subject to dismissal and skip straight to granting it the ultimate relief it seeks.

DOJ's motion should be denied, and the Court should proceed to adjudicate the motions to dismiss, and after that (should the case survive), allow the parties to conduct discovery, as in any other civil action.

**ARGUMENT**

The Federal Rules of Civil Procedure govern this civil action and provide a roadmap for how this case—and nearly all other civil actions—must proceed. Nothing in the Rules nor in the statutory text of the CRA supports any conclusion to the contrary. Similarly, the consensus among the courts to have considered these cases is that the judiciary is required to conduct meaningful review of DOJ's demands. There is no reason for this Court to reach a different result. It should deny DOJ's motion and adjudicate this matter under the normal course set forth in the Federal Rules—starting by resolving the pending motions to dismiss. *See* ECF Nos. 47, 48, 50; *see also* NAACP Intervenors' Mem. Supp. Mot. Dismiss ("NAACP MTD"), ECF No. 49.

**I.      As other courts have held, the Federal Rules govern DOJ's claim.**

The Court should reject DOJ's request to short-circuit the Federal Rules in this case. Those Rules "govern the procedure in *all civil actions* and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules— such as certain admiralty or bankruptcy actions—none involves the CRA. *See* Fed. R. Civ. P. 81(a).

---

[2] DOJ also refers to this motion as a "motion for order to compel," "motion to show cause," and says that it is moving for "an order to show cause." *See, e.g.*, ECF No. 39.

3

Just the opposite. Rule 81(a)(5) expressly provides that "proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute" are subject to the Federal Rules, "except as otherwise provided by statute, by local rule, or by court order in the proceedings." Fed. R. Civ. P. 81(a)(5). As a result, even if a Title III document request could be characterized as a subpoena, it would still be subject to the Federal Rules, as nothing in Rule 81(a)(5) provides an exception for document requests under Title III. Congress knows how to prescribe streamlined proceedings, *see, e.g.*, 29 U.S.C. § 161(2), and it did not do so in Title III. Under the plain text of Rule 1, this action is governed by the Federal Rules of Civil Procedure, just like all other civil actions that lack special carveouts in statutes or the Federal Rules themselves.

As every federal court to reach the issue has agreed, "[n]othing in the text of Title III requires a special statutory proceeding or any abbreviated procedures." *Weber*, 818 F. Supp. at 1182; *see also Oregon*, 2026 WL 318402 at *8; *Amore*, 2026 WL 1040637, at *3; *Fontes*, 2026 WL 1177244, at *1 n.1; *Bellows*, 2026 WL 1430481, at *5 & n.8. No court has endorsed DOJ's view. *See Benson*, 819 F. Supp. 3d at 766 (applying "the Rule 12(b)(6) standard to evaluate the United States' CRA claim" because the United States filed "a traditional civil complaint"); *Galvin*, 2026 WL 972129 at *4, 6 (dismissing complaint); *Wis. Elections Comm'n*, 2026 WL 1430354 at *2, 5 (declining to resolve issue but ultimately dismissing complaint). And DOJ identifies no textual support for its demand for an immediate grant of the final relief it seeks. Nor could it. Title III says only that district courts "shall have jurisdiction by appropriate process to compel the production" of the documents sought. 52 U.S.C. § 20705. Nowhere does it suggest that the "appropriate process" means anything other than the ordinary procedures federal courts use to

4

resolve contested cases. *See Weber*, 816 F. Supp. 3d at 1182 (exercising "appropriate process" by applying the Federal Rules of Civil Procedure).

In *United States v. Powell*, the Supreme Court confirmed that, when a statute uses the language employed in Title III—granting jurisdiction to federal courts to compel production "by appropriate process," but not identifying a particular process—the process that applies is the ordinary process under the Federal Rules, *not* a special proceeding that circumvents those Rules. 379 U.S. at 57–58. There, the Court was presented with language in 26 U.S.C. § 7604(a) identical to the relevant language in Title III, a jurisdictional grant stating that courts shall have jurisdiction "by appropriate process to compel" compliance with federal demands for documents or testimony. *Id.* at 52 n.10. It held that, "[b]ecause [the statute] contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*," and the court may "*inquire into the underlying reasons for the*" government's demand. *Id.* at 58 & n.18 (emphases added). "Accordingly," in a Title III case, "the Court applies the Federal Rules of Civil Procedure as in any other case." *Oregon*, 2026 WL 318402, at *8; *see also Weber*, 816 F. Supp. 3d at 1182.

*Powell* represents a consistent practice: The Supreme Court *always* demands a clear statutory exemption before finding that the Federal Rules do not govern judicial proceedings. *See, e.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) (demanding "clear expression of congressional intent to exempt actions brought under [Social Security Act] from the operation of the Federal Rules of Civil Procedure"); *N.H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 407–08 (1960) ("In the absence of express statutory authorization . . . there is neither justification nor authority for carving out an exception to the uniform and regular civil procedure laid down by the Federal Rules."). Where Congress exempts a particular type of action from the Rules, it does so expressly.

5

*See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (citing 8 U.S.C. § 1252(e)(1)(B)). Title III—like the statute in *Powell*—lacks any such exemption.

DOJ rests its contrary assertion on a single, decades-old, out-of-circuit case, in which the Fifth Circuit described a Title III action as a "special statutory proceeding" that allows for minimal judicial involvement. *Lynd*, 306 F.2d at 225–26; *see also* ECF No. 39-1 at 6 (relying on same). But *Lynd* was decided two years before the Supreme Court's decision in *Powell*, which held that the same statutory language required a process governed by the Federal Rules. *See Powell*, 379 U.S. at 57–58. "The Supreme Court's holding in *Powell* squarely rejects [DOJ's] contention and reliance on *Lynd*." *Oregon*, 2026 WL 318402, at *8; *see also Weber*, 816 F. Supp. 3d at 1182 n.15; *Fontes*, 2026 WL 1177244, at *1 & n.1; *Bellows*, 2026 WL 1430481, at *5 & n.8. Thus, at most, that case might have imposed that rule in the Fifth Circuit for two years, between 1962 and 1964. *Lynd* was never binding on this Court and, for decades now, it has not even been good law in the Fifth Circuit. *E.g.*, *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("Fifth Circuit precedent is implicitly overruled if a subsequent Supreme Court opinion 'establishes a rule of law inconsistent with' that precedent." (quoting *Gonzalez v. Thaler*, 623 F.3d 222, 226 (5th Cir. 2010), *aff'd*, 565 U.S. 134 (2012)). This Court should follow *Powell*.

## II.  The Court must conduct a meaningful review of DOJ's Title III demand.

DOJ is also wrong to minimize the Court's role in reviewing DOJ's demand. To invoke the powers of a federal court to compel production, DOJ must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose." *Powell*, 379 U.S. at 57; *see also* 52 U.S.C. § 20703 (providing that Title III "demand shall contain a statement of the basis and the purpose therefor"). After all, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be

6

abused." *Powell*, 379 U.S. at 58. "[A]n abuse would take place if the summons had been issued for an improper purpose." *Id.*

Thus, courts—including the same court of appeals that decided *Lynd*—regularly engage in meaningful judicial review of government demands issued under myriad statutory schemes. *See, e.g.*, *United States v. Richards*, 631 F.2d 341, 344 (4th Cir. 1980) (quoting *Powell*, 379 U.S. at 58); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017); *Sugarloaf Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 347–50 (1st Cir. 2009); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). In doing so, "courts are not required to enforce every agency [demand]" or ignore an agency acting in excess of statutory authority or out of compliance with statutory requirements. *EEOC v. Univ. of Pa.*, 850 F.2d 969, 980–81 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) (holding courts must quash demands that exceed investigatory power of the federal agency).

Courts considering materially identical claims have uniformly rejected DOJ's suggestion that its suit is subject to only cursory judicial review, *see* DOJ Mem. 10–15. As the *Oregon* court concluded: "There is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of Plaintiff's allegations regarding Defendants' alleged failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place." *Oregon*, 2026 WL 318402, at *8 (citing *Powell*, 379 U.S. at 58); *see also Weber*, 816 F. Supp. 3d at 1182; *Galvin*, 2026 WL 972129, at *1 & n.3, 6;

7

*Amore*, 2026 WL 1040637, at *3–4; *Bellows*, 2026 WL 1430481, at *5 & n.8. Even the *Benson* court recognized that a so-called "summary enforcement proceeding" is still subject to judicial review and it ultimately "appl[ied] the Rule 12(b)(6) standard to evaluate the United States' CRA claim," 819 F. Supp. 3d at 766 (citing *Powell*, 379 U.S. at 58 n.18), and dismissed the complaint, *id.* at 770. And, as the *Wisconsin Elections Commission* court noted, because a statewide voter registration list is not a record within the meaning of Title III, *see* NAACP MTD 7–10, DOJ's claim is subject to dismissal under *any* standard of review, 2026 WL 1430354 at *2–3 ("[T]he court's analysis of the dispositive issue would be the same either way, so the court need not resolve" DOJ's *Lynd* argument).

In any event, the context of *Lynd* and the contemporaneous cases on which DOJ relies, *see* DOJ Mem. 5–6, distinguishes those cases. *Lynd* involved demands for voter records from specific counties in Mississippi and parishes in Louisiana that were sought "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within [those specific] jurisdiction[s]." 306 F.2d at 229 n.6; *see also Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960) ("[T]he demand to the registrars made by the Attorney General . . . follows almost exactly the pertinent wording in Sections 301 and 303 of the [CRA]."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). That was undeniably a valid demand under 52 U.S.C. § 20703, as Title III's "clearest purpose" is to permit investigations "concerning infringement or denial of . . . voting rights." *Lynd*, 306 F.2d at 228; *see Gallion*, 187 F. Supp. at 853 ("The legislative history leaves no doubt but that [Title III of the CRA] is designed to secure a more effective protection of the right to vote."). And there was also no doubt that the federal government had a valid "basis" to suspect racial discrimination in those cases in localities where Black

8

residents had been overwhelmingly excluded from the voter rolls. *See, e.g.*, *United States v. Lynd*, 301 F.2d 818, 821 (5th Cir. 1962) (explaining that no Black voters "had been registered in Forrest County during defendant Lynd's term of office," while "none of the defendants nor their deputies were able to testify to any individual white person who had been rejected").

None of the factors that made *Lynd* such an easy case are present here. *Lynd* observed that if there were a "genuine dispute," the court would need to adjudicate both "whether the written demand has been made" according to Title III and "whether or not any specified particular paper or record" comes within the ambit of the statute's definition of those terms. 306 F.2d at 226. Here, as the pending motions to dismiss make clear, there are precisely such disputes. *See, e.g.*, NAACP MTD 7–10; *id.* at 10–14; *see also infra* Part IV. *Lynd* also emphasized that it was "of great importance" that the records sought there were "public records which ought ordinarily to be open to legitimate reasonable inspection," and *not* "confidential, private papers." 306 F.2d at 231. Here, in contrast, DOJ seeks sensitive and private information that is regularly protected from disclosure. And critically, the avowed purpose of DOJ's request here falls outside of Title III, because—even by DOJ's own telling—the demand relates not to the protection of voting rights, but to administrative requirements imposed by other statutes with their own enforcement and investigatory mechanisms: the NVRA and HAVA. *See* DOJ Mem. 2; *see also* NAACP MTD 14–18 (explaining this purpose is beyond the scope of Title III). Although *Lynd*'s approach may have made sense for requests for publicly available registration forms at risk of being destroyed in 1960s Mississippi, it cannot sustain DOJ's nationwide crusade seeking to compel production of the sensitive personal data of every registered voter in Virginia (and across the country). *See also Bellows*, 2026 WL 1430481, at *6–10.

9

Finally, DOJ contends that *Powell* embraced meaningful judicial inquiry solely "because it was specifically authorized by [§] 7605(b) of the IRC." DOJ Mem. 8. But *Powell* says the opposite. The petitioners in *Powell* argued that § 7605(b) "impose[d] a probable cause standard" on tax summonses (*i.e.*, a heightened burden for enforcing a summons through judicial enforcement); but the Court rejected that argument, explaining that § 7605(b) does "no more than to emphasize the responsibility of agents to exercise prudent judgment in wielding" their authority. *Powell*, 379 U.S. at 56. In other words, the statute DOJ points to did *not* add a unique, substantive obligation that distinguishes it from Title III. And *Powell* expressly rejected the notion that "under no circumstances may the court inquire into the underlying reasons" for a demand, emphasizing that "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58 (citing Louis L. Jaffe, *The Judicial Enforcement of Administrative Orders*, 76 Harv. L. Rev. 865 (1963)). The Supreme Court based that holding on foundational principles of judicial power, as expounded by Professor Jaffe, not any interpretation of § 7605(b). *See, e.g.*, Jaffe, *supra*, at 866 ("The core of the judicial function where enforcement is in question is the determination of legality."); *id.* at 869 ("The interposition of the judiciary as the enforcing agency must have some meaning. . . . Its exercise is not merely mechanical." (alteration in original) (quoting *NLRB v. Eanet*, 179 F.2d 15, 20–21 (D.C. Cir. 1949))); *id.* at 870 (explaining courts "have the power to correct excessive administrative zeal," including through review "not only for errors of law but for any patent injustice")). Thus, contrary to DOJ's argument, the core of *Powell* as relevant here does not turn on the specifics of the Internal Revenue Code.

Neither *Donaldson v. United States*, 400 U.S. 517 (1971), nor *Becker v. United States*, 451 U.S. 1306 (1981), support DOJ's theory, either, *see* DOJ Mem. at 7, 9–10. Those cases expressly

10

confirm the "Civil Rules, of course . . . have an application to" suits to enforce governmental demands, *Donaldson*, 400 U.S. at 528, and they say nothing about whether and when a proceeding under a federal statute is rendered "summary" or exempt from the Rules. They note that even in such "summary enforcement proceeding[s] . . . the rights of the party summoned [must be] protected." *Id.*; *see Becker*, 451 U.S. at 1308 (same). Here, that only reinforces the need for careful judicial scrutiny: while *Donaldson*, for example, implicated one taxpayer's returns, DOJ demands sensitive records of every registered voter in Virginia. Am. Compl. at 8; ECF No. 39 at 2.

**III.    The proper procedural course is to first resolve the pending motions to dismiss and then, if needed, proceed to discovery.**

The Court should resolve this case via Rule 12 motions, rather than DOJ's so-called "motion to compel," which is not sanctioned by the Federal Rules nor any statute. The Rules provide for motions to dismiss "to test the sufficiency of a complaint." *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). And the Rules set an early deadline for such motions because they "permit courts to evaluate complaints early in the process" so as to avoid the "high costs of frivolous litigation." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Accordingly, Rule 12 motions are intended to "weed[] out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Resolving DOJ's "motion to compel" before the pending motions to dismiss would get the process backwards. DOJ effectively seeks summary judgment, as granting this motion would leave no further dispute to adjudicate. *See* Am. Compl. at 8 (requesting as relief the production of Virginia's voter list); ECF No. 39 at 2 (requesting the same).[3] But doing so would also deprive

---

[3] Consistent with this understanding, after issuing a stay pending the appeals in the California and Oregon cases, the federal court hearing DOJ's parallel case in Hawaii deemed the "motion to compel" filed there as withdrawn, while acknowledging that DOJ could still file "a motion for

Defendants of their right to test the legal sufficiency of DOJ's allegations at the outset. The parties' motions to dismiss are the proper vehicle for evaluating DOJ's claim at this stage in the proceedings. *See supra* note 1 (collecting courts granting motions to dismiss parallel cases).

Even if the Court denies the motions to dismiss, the next step would be for Defendants to conduct discovery on DOJ's allegations, including into central questions of fact that could preclude relief. For example, DOJ asserts that its purpose for seeking Virginians' sensitive data is to ascertain if state officials are practicing "reasonable list maintenance efforts." DOJ Mem. 21. But such representations stand in sharp contrast with the alarming picture painted by news reports and the actions of this administration's own officials. Amid public reporting that DOJ is building a national voter registration list unauthorized by any law,[4] Assistant Attorney General Harmeet Dhillon has been clear that DOJ intends to use the voter information it demands in lawsuits like this one to attempt to compel removal of *hundreds of thousands* of voters from the rolls.[5] In another example, earlier this year then-Attorney General Pam Bondi conditioned the withdrawal of Immigration and Customs Enforcement officers in Minneapolis on unfettered access to the State of Minnesota's voter rolls.[6] DOJ's campaign of voter data lawsuits, and DOJ's related threats,

---

summary judgment, if appropriate after the stay has been lifted" and *after* the pending motions to dismiss "have been ruled upon." Minute Order at 2, *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Apr. 21, 2026), ECF No. 82.

[4] *See, e.g.*, Devin Bartlett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[5] *See* AAG Harmeet Dhillon (@AAGHarmeetDhillon), X (Dec. 18, 2025, at 9:24 a.m. ET), https://x.com/AAGDhillon/status/2001659823335616795 (stating in video discussing these lawsuits: "You're going to see hundreds of thousands of people in some States being removed from the voter rolls.").

[6] Nick Corasaniti, *Why is the Trump Administration Demanding Minnesota's Voter Rolls?*, N.Y. Times (Jan. 26, 2026), https://www.nytimes.com/2026/01/26/us/politics/minnesota-trump-voter-

aligns with broader efforts of the federal government to exercise control over elections in ways the Constitution forbids.[7] And, although voter fraud is exceptionally rare, the White House is reportedly pressuring DOJ to bring more voter fraud prosecutions, which suggests that DOJ's voter roll demands are partially aimed at collecting information for spurious criminal investigations.[8] President Trump himself has urged Republicans to "take over the voting . . . in at least 15 places" and to "nationalize the voting."[9] Indeed, he has issued an Executive Order directing federal agencies to create "state citizenship lists" for determining voter eligibility and another list that he demands be used in determining who is allowed to vote by mail. *See* Exec. Order No. 14,399, 91 Fed. Reg. 17125 (Mar. 31, 2026).

These developments suggest that DOJ actually seeks to amass sensitive voter data to be used in a variety of ways that DOJ has not been forthright about, to either the States or the courts.[10] In fact, the inconsistency between DOJ's statements in court and the real world has drawn the attention of courts hearing these cases in which DOJ seeks to compel states' voter files. *See, e.g.*,

---

rolls.html. Minnesota has been resisting an essentially identical demand for its voters' private, confidential information. *See United States v. Simon*, No. 0:25-cv-03761-KMM-EMB (D. Minn.).

[7] *See, e.g.*, *League of United Latin Am. Citizens v. Exec. Office of the President*, 818 F. Supp. 3d 34, 116–117 (D.D.C. 2026) (granting summary judgment on claim that Executive Order requiring voter registration applicants to provide documentary proof of citizenship overstepped the constitutional separation of powers).

[8] Perry Stein, Patrick Marley & Isaac Arnsdorf, *DOJ Struggles as White House Presses on Voter Fraud*, Wash. Post (Feb. 20, 2026), https://www.washingtonpost.com/politics/2026/02/20/trump-voting-fraud-justice-department/.

[9] Mariana Alfaro, *Trump Wants to "Nationalize the Voting," Seeking to Grab States' Power*, Wash. Post (Feb. 3, 2026), https://www.washingtonpost.com/politics/2026/02/02/trump-elections-nationalize-fraud.

[10] For example, in the appellate briefs it filed in two parallel cases, DOJ raised "the specter of noncitizen" voting as a reason to expedite appeals. Emergency Mot. to Expedite at 16, *Benson*, No. 26-1225 (6th Cir. Feb. 27, 2026), ECF No. 6-1; Mot. to Expedite at 15, *Oregon*, No. 26-1231 (9th Cir. Mar. 3, 2026), ECF No. 12.1 (same). But DOJ did not raise the issue of noncitizen voting before the district courts in those cases—nor has it done so here.

*Oregon*, 2026 WL 318402, at \*11 ("The presumption of regularity . . . no longer holds."); *Bellows*, 2026 WL 1430481, at \*3 n.6 (observing that a DOJ attorney's in-court statements that the Department of Justice is not attempting to a compile a national voter database "were almost immediately undermined" by the issuance of Exec. Order No. 14,399). Even if the Amended Complaint is not dismissed, discovery into the veracity of DOJ's stated purpose is necessary before DOJ may be granted any relief; this Court is "not obliged to accept a contrived statement and purpose."[11] *Weber*, 816 F. Supp. 3d at 1184–86; *see also Groder v. United States*, 816 F.2d 139, 144 (4th Cir. 1987) ("The abuse of judicial process that would lead courts to deny enforcement of a summons has been tied to a showing of governmental bad faith."); *Hintze v. IRS*, 879 F.2d 121, 127 (4th Cir. 1989), *abrogated* by *Church of Scientology of California v. United States*, 506 U.S. 9 (1992) ("Of course, the dispositive, underlying question in each case is 'whether the [government] is pursuing [enforcement] in good faith.'") (quoting *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 317 n.19 (1978)); *QueerDoc, PLLC v. DOJ*, 807 F. Supp. 3d 1295, 1302–04 (W.D. Wash. 2025) (quashing subpoena whose "pretextual nature" "demonstrate[d] that DOJ has abandoned good faith investigation") (citing *Powell*, 379 U.S. at 51, 57–58).[12]

---

[11] DOJ has not complied with substantive and necessary safeguards imposed by federal law before it may lawfully obtain and use data of the sort it demands here. These include the Privacy Act's restrictions on the use of computerized "matching programs," requiring written agreements detailing certain information, including the "legal authority" for the program. *See* 5 U.S.C. § 552a(o), (p), (q). Such substantive safeguards are distinct from the procedural requirements that DOJ has clearly failed to satisfy before demanding Virginians' sensitive data and which are proper grounds for dismissal under Rule 12. *See* NAACP MTD Mem. 20–23.

[12] As further evidence that DOJ's demand was not made in good faith, DOJ's own recent submission to courts in several of these cases contradicts what it previously told the States and courts about its purpose. Specifically, it reveals that DOJ sought guidance from its Office of Legal Counsel in or before September 2025 to inform these efforts, which DOJ launched specifically "to seek statewide voter lists, and then to share the lists with" DHS, "[i]n response to" an Executive Order issued by the President in early 2025 "for the purpose of identifying illegal aliens who are

In short, granting DOJ the final relief it seeks—before Defendants have any opportunity to conduct discovery relevant to such factual issues—would be premature and contrary to the well-established practices that govern civil litigation. *See, e.g.*, *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021) (explaining the "general rule that summary judgment should only be granted 'after adequate time for discovery.'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**IV.    The flawed merits arguments folded into DOJ's motion illustrate the procedural impropriety of this "motion to compel."**

As part of its effort to avoid ordinary Rule 12 motion practice, DOJ crams many of its merits arguments into its "motion to compel." These include arguments as to whether DOJ provided Virginia a suitable "statement of the basis and the purpose" of its Title III demand, *see* DOJ Mem. 10–16; whether Virginia's statewide voter list qualifies as "record or paper" under Title III, *see id.* at 16–21; and whether the CRA preempts Virginia's privacy laws, *see id.* at 21–23.

DOJ's disjointed effort to preempt these critical merits questions in its so-called "motion to compel" illustrates both the existence of a "genuine dispute" as to the propriety of DOJ's Title III demand, *Lynd*, 306 F.2d at 226, and the shortcomings of attempting to litigate the entire case through what is effectively a discovery motion. *Cf. Fernandez v. Antczak*, No. 2:23-cv-01149, 2023 WL 12204881, at *2 (E.D. Pa. Oct. 23, 2023) ("The validity of a claim . . . is not properly dealt with on a motion to compel."); *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 288 F.R.D. 282, 286 n.1 (S.D.N.Y. 2012) ("[A] discovery motion is not the proper forum for deciding the merits." (citation modified)). The parties' motions to dismiss, however, address each of these disputes, as well as other defects in the Amended Complaint. *See, e.g.*, NAACP MTD. This Court

---

ineligible to vote." *See, e.g.*, Exhibit 1 at 1, *United States v. N.Y. Bd. of Elections*, No. 1:25-cv-01338 (N.D.N.Y. May 15, 2026), ECF No. 97-1 ("Authority to Obtain and Share Statewide Voter Roll Data," 50 Op. O.L.C. ___ (May 12, 2026)).

15

should adjudicate this case through the arguments presented there, including DOJ's forthcoming response and the parties' replies in support of their motion, rather than allowing DOJ to take two bites at the apple with the needlessly duplicative arguments made in its procedurally improper motion to compel.

At any rate, two new decisions from parallel cases in Maine and Wisconsin further explain why DOJ's misplaced merits arguments fail. First, both deny motions to compel and demonstrate that such a motion is not the proper vehicle to resolve these cases. *Bellows*, 2026 WL 1430481, at *10; *Wis. Elections Comm'n*, 2026 WL 1430354, at *5. Second, both courts endorsed the reasoning of *Benson*, 819 F. Supp. 3d at 768–70, and held that Title III does not extend to voter registration lists. *See Bellows*, 2026 WL 1430481, at *6–7; *Wis. Elections Comm'n*, 2026 WL 1430354, at *3–5; *cf.* DOJ Mem. 16–21 (attempting to refute *Benson*); *see also* NAACP MTD 7–10. The plain text of Title III—buttressed by the fact that DOJ's view of a "record" would render the statute's preservation requirements fundamentally inconsistent with HAVA and NVRA—is alone sufficient to end this case. *Bellows*, 2026 WL 1430481, at *6–7; *Wis. Elections Comm'n*, 2026 WL 1430354, at *3–5. In addition, as a separate and independent reason for dismissal, the *Bellows* decision held that investigating list maintenance obligations is not a proper purpose for a Title III demand. *See* 2026 WL 1430481, at *7–8 ("If the Department of Justice wants to enforce HAVA and the NVRA, it must use the pre-suit investigation and enforcement mechanisms that Congress provided in those statutes."); *see also* NAACP MTD 14–18.

In sum, the Maine and Wisconsin decisions further confirm that this Court should decide the pending Rule 12 motions first, which explain why the Court should dismiss this case and for the same reasons deny DOJ's improper and premature request for final relief sought in the "motion to compel."

**CONCLUSION**

For the foregoing reasons, the Court should deny the "motion to compel."


Dated: June 1, 2026                    Respectfully submitted,

                                       */s/ Aria C. Branch*
                                       Aria C. Branch, VSB #83682
                                       Richard A. Medina, DC Bar No. 90003752*
                                       Kevin R. Kowalewski, NY Bar No. 5946645*
                                       **ELIAS LAW GROUP LLP**
                                       250 Massachusetts Ave. NW, Suite 400
                                       Washington, DC 20001
                                       T: (202) 968-4490
                                       F: (202) 968-4498
                                       abranch@elias.law
                                       rmedina@elias.law
                                       kkowalewski@elias.law

                                       Walker R. McKusick, WA Bar No. 63205*
                                       **ELIAS LAW GROUP LLP**
                                       T: (206) 656-0177
                                       1700 Seventh Avenue, Suite 2100
                                       Seattle, WA 98101
                                       wmckusick@elias.law

                                       * Admitted *Pro Hac Vice*

                                       *Counsel for NAACP Intervenors*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 1st day of June, 2026, with a copy of this document via the Court's CM/ECF system.

/s/ Aria C. Branch
Aria C. Branch, VSB #83682
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
abranch@elias.law

*Counsel for NAACP Intervenors*

18