**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>STEVEN KOSKI, in his Official Capacity as Commissioner of the Virginia Department of Elections,<br><br>　　　　　Defendant. | No. 3:26-cv-00042-RCY |

**<u>REPLY MEMORANDUM IN SUPPORT OF NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE AND NAACP VIRGINIA STATE CONFERENCE'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.      Rule 12(b) motions are the appropriate vehicles to test the sufficiency of the
        complaint.................................................................................................................... 2

II.     The CRA does not entitle DOJ to production of Virginia's dynamic voter list. ................ 4

III.    DOJ did not state any "basis" or a proper "purpose" for its Title III demand. ................... 8

        A.  DOJ failed to provide *any* "basis" for its demand. ........................................... 8

        B.  DOJ failed to state a proper "purpose" for its demand. ...................................... 10

IV.     DOJ failed to demonstrate that it is entitled to unredacted records because Title III
        does not preempt Virginia law. ................................................................................... 13

V.      DOJ's collection of Virginia's voter list would violate the Privacy Act. .......................... 17

CONCLUSION......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) .................................................................................................. 11

*Becker v. United States*,
451 U.S. 1306 (1981) ................................................................................................. 4

*Bowe v. United States*,
607 U.S. 13 (2026) ..................................................................................................... 5

*Bryan v. United States*,
524 U.S. 184 (1998) .................................................................................................. 8

*Califano v. Yamasaki*,
442 U.S. 682 (1979) .................................................................................................. 4

*Carefirst of Md., Inc. v. Johnson & Johnson*,
745 F. Supp. 3d 288 (E.D. Va. 2024) ....................................................................... 9

*CFPB v. Source for Pub. Data, L.P.*,
903 F.3d 456 (5th Cir. 2018) ..................................................................................... 8

*Doe v. Stephens*,
851 F.2d 1457 (D.C. Cir. 1988) .......................................................................... 17, 19

*DOJ v. Tax Analysts*,
492 U.S. 136 (1989) .............................................................................................. 6, 7

*Donaldson v. United States*,
400 U.S. 517 (1971) .................................................................................................. 4

*Ferdinand-Davenport v. Children's Guild*,
742 F. Supp. 2d 772 (D. Md. 2010) ........................................................................... 9

*Fischer v. United States*,
603 U.S. 480 (2024) .................................................................................................. 8

*Forsham v. Harris*,
445 U.S. 169 (1980) .................................................................................................. 6

*Gelbard v. United States*,
408 U.S. 41 (1972) .................................................................................................. 17

*In re Subpoena Duces Tecum,*
    228 F.3d 341 (4th Cir. 2000) ............................................................................. 12

*Island Creek Coal Co. v. Lake Shore, Inc.,*
    692 F. Supp. 629 (W.D. Va. 1988) ..................................................................... 11

*Jimenez v. Quarterman,*
    555 U.S. 113 (2009) ............................................................................................. 5

*Kennedy v. Bruce,*
    298 F.2d 860 (5th Cir. 1962) ............................................................................. 10

*Kennedy v. Lynd,*
    306 F.2d 222 (5th Cir. 1962) ............................................................................... 3

*LULAC v. EOP,*
    818 F. Supp. 3d 34 (D.D.C. 2026) ................................................................ 17, 19

*Mobley v. Logs Legal Grp. LLP,*
    No. 1:24-cv-2161, 2025 WL 1732517 (E.D. Va. June 20, 2025) .......................... 9

*Niz-Chavez v. Garland,*
    593 U.S. 155 (2021) ............................................................................................. 9

*Project Vote/Voting for Am., Inc. v. Long,*
    682 F.3d 331 (4th Cir. 2012) ............................................................................. 13

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections,*
    996 F.3d 257 (4th Cir. 2021) .................................................................. 6, 13, 15

*Tyler v. Corner Const. Corp.,*
    167 F.3d 1202 (8th Cir. 1999) ........................................................................... 11

*United States v. Amore,*
    No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) ....................*passim*

*United States v. Bellows,*
    No. 1:25-cv-00468, 2026 WL 1430481 (D. Me. May 21, 2026) .................*passim*

*United States v. Benson,*
    819 F. Supp. 3d 753 (W.D. Mich. 2026) ....................................................... 1, 3, 4

*United States v. Fernandez-Sanchez,*
    46 F.4th 211 (4th Cir. 2022) ............................................................................. 10

*United States v. Fontes,*
    No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) ..................... 1, 4

iii

*United States v. Galvin*,
   No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026)....................................1, 2, 9

*United States v. Oregon*,
   No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ......................................*passim*

*United States v. Powell*,
   379 U.S. 48 (1964) ..............................................................................................1, 3, 4

*United States v. Weber*,
   816 F. Supp. 3d 1168 (C.D. Cal. 2026) ...................................................................*passim*

*United States v. Wis. Elections Comm'n*,
   No. 25-cv-1036, 2026 WL 1430354 (W.D. Wis. May 21, 2026) ...............................1, 4, 7

## STATUTES

18 U.S.C. § 1512(c) ..............................................................................................8

26 U.S.C. § 7604(a) ..............................................................................................3

26 U.S.C. § 7605(b) ..............................................................................................3

5 U.S.C. § 552a .................................................................................................. 14

5 U.S.C. § 555(a) ............................................................................................... 17

52 U.S.C. § 20507(i)(1) ..............................................................................10, 14, 15

52 U.S.C. § 20701 ......................................................................................... 2, 5, 6, 7

52 U.S.C. § 20703 ..........................................................................................1, 8, 9, 14

52 U.S.C. § 20704 .............................................................................................. 14

52 U.S.C. § 20705 ...............................................................................................3

52 U.S.C. § 21083 .............................................................................................. 15

Va. Code § 2.2-3815(B)(2) ................................................................................... 13

Va. Code § 24.2-404(A)(10) ................................................................................. 16

Va. Code § 24.2-405(C) ....................................................................................... 13

Va. Code § 24.2-444(C) ....................................................................................... 13

**RULES**

Fed. R. Civ. P. 1 ..............................................................................................................4

**OTHER AUTHORITIES**

*Alter*, Merriam-Webster,
   https://www.merriam-webster.com/dictionary/alter (last accessed June 4, 2026)...................... 7

Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. __ (May 12, 2026)..... 5

68 Fed. Reg. 47610-01 (Aug. 11, 2003) ............................................................................ 17

70 Fed. Reg. 43904-01 (July 29, 2005) ........................................................................ 17, 19

82 Fed. Reg. 24147-01 (May 25, 2017)........................................................................ 17, 18

**INTRODUCTION**

DOJ brought this case, and dozens of parallel cases against dozens of other States, seeking to compel production of detailed and unredacted statewide voter files under Title III of the Civil Rights Act ("CRA"). Yet here and across the country, DOJ failed to comply with the basic requirements of the CRA, and it demands records that fall outside the CRA's scope.

Unable to defend its demands on the merits, DOJ has resorted to arguing that federal courts have no substantive role in reviewing those demands, even while seeking judicial imprimatur to enforce them. On every point, the precedent and statutory text require rejection of DOJ's view. Eight federal courts have now dismissed DOJ's complaints in parallel cases against other States; not one has found DOJ to have stated a valid CRA claim.[1] DOJ provides no reason for this Court to break with that universal consensus.

First, the Federal Rules of Civil Procedure apply to this case, like any other, under the plain terms of the CRA, which specifies no alternative procedure. *See United States v. Powell*, 379 U.S. 48, 58 n.18 (1964). The Court must therefore review the lawfulness of DOJ's demand to ensure that it does "not permit its process to be abused," which would occur if DOJ has issued its demand "for an improper purpose" under that Act. *Id.* at 58.

Second, a review of DOJ's demand here requires the conclusion that it has no basis under law. The CRA required DOJ to state "the basis and the purpose" for its request. 52 U.S.C. § 20703.

---

[1] *See United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026), *argued*, No. 26-1225 (6th Cir. May 13, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *argued*, No. 26-1232 (9th Cir. May 19, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026), *argued*, No. 26-1231 (9th Cir. May 19, 2026); *United States v. Galvin*, No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Amore*, No. 25-cv-00639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Fontes*, No. 2:26-cv-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); *United States v. Wis. Elections Comm'n*, No. 25-cv-1036, 2026 WL 1430354 (W.D. Wis. May 21, 2026); *United States v. Bellows*, No. 1:25-cv-00468, 2026 WL 1430481 (D. Me. May 21, 2026).

1

But as in other States, DOJ's demand of Virginia "offered no basis—none—and the demand was therefore facially inadequate." *Galvin*, 2026 WL 972129, at *4. Nor did DOJ state a lawful purpose. It claims it seeks to investigate compliance with two different federal statutes, the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA). But those statutes create a "comprehensive scheme for the creation and upkeep of states' computerized" voter lists, and nothing in them (or any other federal law) authorizes DOJ to do what it has made clear it seeks to do with its current effort—i.e., conduct a "line-by-line audit of each state's computerized" voter lists. *Bellows*, 2026 WL 1430481, at *8.

Indeed, in this case, DOJ does not even bother to attempt to allege claims under either the NVRA or HAVA, instead proceeding entirely under the CRA. But the computerized voter list DOJ seeks falls entirely outside the scope of the CRA, because it is *created* by election officials and is not a record that has "come into [their] possession," as the CRA requires. 52 U.S.C. § 20701. Separately, DOJ did not comply with the substantive and procedural requirements of the Privacy Act before issuing its wave of unprecedented demands.

For any or all of those reasons, the Court should dismiss this case with prejudice.

## ARGUMENT

### I.    Rule 12(b) motions are the appropriate vehicles to test the sufficiency of the complaint.

DOJ's lead argument is that the Federal Rules of Civil Procedure—including Rule 12—do not apply to this case. *See* Mem. of the U.S. in Opp'n to Mots. to Dismiss ("Opp'n") at 3–6, ECF No. 58. Instead, DOJ seeks to short-circuit the ordinary and established litigation process and move directly to judgment through a vaguely defined "summary proceeding" with no procedural rules and no analog anywhere in federal law. As NAACP Intervenors have explained and multiple federal courts have now held, nothing in Title III creates such an exemption and the cases DOJ

2

relies on in support of its argument—*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), and a handful of other out-of-circuit cases from the 1960s—were shortly abrogated by the Supreme Court's subsequent decision in *United States v. Powell*, 379 U.S. 48 (1964). *See* NAACP Intervenors' Mot. to Compel Opp'n at 5–10 ("NAACP MTC Opp'n"), ECF No. 60; *see also Oregon*, 2026 WL 318402, at *8; *Weber*, 816 F. Supp. 3d 1168, at 1182 & n.15; *Amore*, 2026 WL 1040637, at *4; *Bellows*, 2026 WL 1430481.[2] *Powell*'s holding that when a statute "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply," controls here. 379 U.S. at 58 n.18. That holding was based on statutory text in the Internal Revenue Code ("IRC") *identical* to the relevant language in Title III—a jurisdictional grant stating that courts "shall have jurisdiction by appropriate process to compel" compliance, *see* 52 U.S.C. § 20705; 26 U.S.C. § 7604(a). *See Powell*, 379 U.S. at 58 & n.18; *see also* NAACP Intervenors' Mem. Supp. Mot. Dismiss ("NAACP MTD"), ECF No. 49, at 11 n.4.

DOJ's contention that "*Powell* referred to a process expressly provided in the IRC that is missing from the CRA" inverts that case's relevant holding. Opp'n at 5. *Powell* held that (like Title III), the IRC "contains *no provision specifying the procedure* to be followed in invoking the court's jurisdiction." 379 U.S. at 58 n.18 (emphasis added). The IRC's provision that "[n]o taxpayer shall be subjected to unnecessary examination or investigations," 26 U.S.C. § 7605(b) provides an additional *substantive* basis for invalidating an IRS summons, but it does not specify any *procedure*. Where a statute confers jurisdiction on the federal courts to act "by appropriate

---

[2] DOJ offers a stray citation to Rule 81, which identifies certain types of proceedings for which the Federal Rules do not apply. Opp'n at 4. But as previously explained, Rule 81 does not apply to Title III, *see* NAACP MTC Opp'n at 3–4, and DOJ does not contend otherwise, *see* Opp'n at 4 (noting Rule 81 discusses "*other* federal claims" to which the Federal Rules do not apply (emphasis added)). DOJ is also wrong to argue that *Benson* "rejected" movants' arguments. Opp'n at 4 n.2. *Benson* applied "the Rule 12(b)(6) standard to evaluate" and dismiss DOJ's CRA claim because DOJ had filed "a traditional civil complaint," just as it did here. 819 F. Supp. 3d at 766.

process," and no alternative procedure is specified, the Federal Rules apply. *See Powell*, 379 U.S. at 58 n.18; *see also* Fed. R. Civ. P. 1; *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979). DOJ has not identified any alternative procedural rules—its position seems to be that there are *no* rules governing this proceeding. DOJ's attempt to analogize Title III to a grand jury proceeding, Opp'n at 4, also fails for this reason—instead of the procedural void envisioned by DOJ here, the procedures governing grand jury proceedings are specified by the Federal Rules of Criminal Procedure.

*Becker v. United States*, 451 U.S. 1306, 1308 (1981) (Rehnquist, J., in chambers), does not support DOJ. There, Justice Rehnquist cited the Court's earlier decision in *Donaldson v. United States*, 400 U.S. 517, 529 (1971), for the proposition that "the footnote in *Powell* was not intended to impair a summary enforcement proceeding." But that is simply an acknowledgement that under Rule 81(a)(5) (which was then numbered 81(a)(3)), the Federal Rules apply to "proceedings involving a subpoena" "except as otherwise provided by statute, by local rule, or by court order in the proceedings." As a result, "a district court, by local rule or by order, *may* limit the application of the rules in a summons proceeding," "so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Donaldson*, 400 U.S. at 528–29 (emphasis added). Even if a Title III demand could be characterized as a "subpoena" under Rule 81(a)(5)—a word that does not appear in the CRA—no statute, local rule, or court order provides for alternative procedures.

## II.    The CRA does not entitle DOJ to production of Virginia's dynamic voter list.

DOJ's claim must fail because—as multiple courts have now held—Virginia's statewide voter registration list ("SVRL") falls outside the textual scope of the CRA. *See Benson*, 819 F. Supp. 3d at 768–70; *Fontes*, 2026 WL 1177244, at *3–7; *Bellows*, 2026 WL 1430481, at *7; *Wis. Elections Comm'n*, 2026 WL 1430354, at *3–5; *contra* Opp'n at 7–10. The voter list is a record

that Virginia election officials themselves generate, but the CRA applies only to records that "come into [the] possession" of election officials from some other source relating to a voter's "application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701; *see also* NAACP MTD at 9–10.

DOJ offers no serious textual analysis of the statutory phrase "comes into his possession." *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language."). Instead, DOJ obfuscates the issue with a lengthy discourse about whether the statewide voter registration list "relates to" voter registration. Opp'n at 7–8 (arguing that the SVRL is a "composite" of "records" that "relate to" voter registration). That is beside the point—the question is whether the SVRL is a "record[] [or] paper[]" which *itself* "comes into [the Commissioner's] possession," which is an independent requirement that must be met for a record to fall within the scope of the CRA. 52 U.S.C. § 20701 (emphasis added). If anything, DOJ's argument only confirms that the SVRL is internally generated and thus not covered by the statute. Indeed, DOJ's own Office of Legal Counsel agrees that "comes into possession" is equivalent to "receives." *See* Authority to Obtain and Share Statewide Voter Roll Data, 50 Op. O.L.C. __ (May 12, 2026) at 9. That aligns with common usage: a person "receives" or "comes into possession" of an antique chair bequeathed by a family member, but not a chair they build themselves in their basement.

Having no textual argument, DOJ falls back on *ipse dixit* about "the statute's purpose." Opp'n at 9. Interpreting Title III according to its plain meaning, DOJ argues, would "subvert" the statute's investigatory purpose by "frustrating the United States' ability to acquire evidence that could shed light on whether a violation of the law has occurred." *Id.* But "[p]urposive argument simply cannot overcome the force of the plain text." *Bowe v. United States*, 607 U.S. 13, 41 (2026)

(citation omitted). And in any event, as explained in NAACP Intervenors' Motion and further elaborated below, investigating violations of the NVRA and HAVA is not the purpose of Title III. Instead, that is the purpose of the NVRA. And the NVRA provides its own mechanism through which DOJ and the public can obtain information about the state's compliance with the NVRA, which *does* reach internally-created documents but *does not* require disclosure of sensitive information that is required to be redacted by state law. *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 265 (4th Cir. 2021).

DOJ's comparison of Title III to the Freedom of Information Act (FOIA) only further proves the point. In *DOJ v. Tax Analysts*, the Supreme Court observed that, for the purposes of FOIA, a record could be subject to disclosure if it were "*create[d] or* obtain[ed]" by an agency. 492 U.S. 136, 144 (1989) (emphasis added) ("an agency must 'either create or obtain' the requested materials") (quoting *Forsham v. Harris,* 445 U.S. 169, 182 (1980)). Under this clear directive, the Court refused to limit FOIA to records created by the agency because the statute covers material generated internally *or* obtained externally. *See id.* The CRA contains no similar language: the covered record must "come into possession" of the official. 52 U.S.C. § 20701.

DOJ's argument, based on *Tax Analysts*, that "coming into possession of material refers to *when*, not how, the possession began," Opp'n at 9, simply misreads that case. *Tax Analysts* actually held the opposite: an externally generated record is subject to FOIA *only* if the agency is "in *control* of the requested materials at the time the FOIA request is made," and "[b]y *control*, [the Court] mean[t] that the materials have come into the agency's possession *in the legitimate conduct of its official duties*." 492 U.S. at 145 (emphases added). In other words, the Court used the phrase "come into the agency's possession," to distinguish *how*—"in the legitimate conduct of its official duties"—an agency must acquire the records for the records to be within the agency's "control."

*Id.* Thus, "the term 'agency records' is not so broad as to include personal materials in an employee's possession, even though the materials may be physically located at the agency." *Id.*

Indeed, it would make no sense to interpret "come into his possession" in Title III as merely imposing a temporal limitation: any election official, of course, can only retain and preserve records currently in their possession. And even if this were a technically permissible reading as a matter of grammar, this reading would still have the fatal flaw of erasing the phrase "which come into his possession" from the statute, rendering that clause meaningless. Further, Title III already contains a temporal limitation: records are required to be retained and preserved for 22 months from the date of a federal election. 52 U.S.C. § 20701. It makes no sense to read a different—and silent—temporal limitation elsewhere into the statute.

As NAACP Intervenors have explained, DOJ's reading would also render the CRA inconsistent with HAVA, because it would mean the CRA requires states to preserve and not modify a voter list that HAVA requires to be constantly updated. NAACP MTD at 7–9. *See Wis. Elections Comm'n*, 2026 WL 1430354, at *5 (noting DOJ could not explain "what it means to 'retain' or 'preserve' a document like a voter registration list that is updated on a near-constant basis"). Again, DOJ offers little more than *ipse dixit* in asserting that Title III's prohibition on "alter[ing]" records "does not . . . logically apply to SVRL maintenance, which is designed to ensure accuracy and confidence in voter registration rolls, not to undermine them." Opp'n at 10. That sort of purposive reasoning cannot overcome the plain meaning of the term "alter," which is "to make different without changing into something else." *Alter*, Merriam-Webster, https://www.merriam-webster.com/dictionary/alter (last accessed June 4, 2026). The word "alter" does not inherently suggest making a document "unavailable, inaccessible, or inaccurate for

evidentiary purposes"—the most natural reading is simply to change something. *Contra* Opp'n at 9–10.

*Fischer v. United States* proves the point. 603 U.S. 480, 487 (2024). The obstruction-of-justice statute analyzed in that case made it a crime to "corruptly . . . alter[] . . . a record . . . *with the intent to impair the object's integrity or availability for use in an official proceeding*." 18 U.S.C. § 1512(c) (emphasis added). The CRA, in stark contrast, contains no comparable intent requirement limiting the reach of "alter." Further, that Title III criminalizes only the "willful" alteration of records is cold comfort to election officials, who, by now, are surely on notice of DOJ's position in this case that Title III applies to the SVRL. *See Bryan v. United States*, 524 U.S. 184, 91–92 (1998) ("[T]o establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." (quotation marks omitted)).

### III.    DOJ did not state any "basis" or a proper "purpose" for its Title III demand.

Separately, the Court may grant the motion to dismiss because DOJ did not comply with the basic and express requirements of the CRA. Before a government agency may validly demand information pursuant to an authorizing statute, it first "must comply with statutory requirements." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 460 (5th Cir. 2018). For Title III, DOJ must issue a written demand for covered records that "contain[s] *a* statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). As NAACP Intervenors explained in their motion, DOJ fails to provide *any* basis for its demand, and its stated purpose is not proper under the CRA. *See* NAACP MTD at 10–19. DOJ fails to rebut these showings, either one of which is sufficient to dismiss the complaint.

#### A.    DOJ failed to provide *any* "basis" for its demand.

There is no way to read DOJ's July 15 and August 14 letters to contain any statement of the "basis" for DOJ's demand for Virginia's unredacted voter registration list. DOJ argues that "as

stated in [the July 15 letter]," "the basis for the demand was Title III of the CRA." Opp'n at 10. That is wrong. The July 15 letter does not make a Title III demand or refer to Title III at all. ECF No. 39-3. DOJ's Title III demand appears for the first time in the August 14 letter. ECF No. 39-4 at 3.

DOJ is also wrong that the July 15 and August 14 letters can be read together as a single "demand." Opp'n at 14–15. *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), makes this clear and DOJ's effort to distinguish it misreads the case. The Court's holding rested on a highly textual interpretation of the singular indefinite article "a," not the mere fact that the government sought "a procedural advantage," as DOJ now contends. *Id.* at 161; *contra* Opp'n at 14–15. Similarly, in this case, Title III requires that "*[t]his* demand"—again, with the statutory text framed in singular terms—"shall contain *a* statement of the basis and purpose therefor." 52 U.S.C. § 20703 (emphases added). As a result, DOJ's "demand" fails to meet the statutory requirements of Title III.

Moreover, as NAACP Intervenors have explained and multiple courts have held, the "basis" must be "a statement of the *factual* basis giving rise to the demand for records." *Galvin*, 2026 WL 972129, at *5 (emphasis added); *see also Weber*, 816 F. Supp. 3d at 1184 ("The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law."); *Oregon*, 2026 WL 318402, at *9; *Amore*, 2026 WL 1040637, at *5; NAACP MTD at 12–13 (making this argument). DOJ offers *no* authority or argument to support the notion that merely citing Title III suffices as a statement of the "basis" of its demand. It has thus abandoned the issue. *See Mobley v. Logs Legal Grp. LLP*, No. 1:24-cv-2161, 2025 WL 1732517, at *3 (E.D. Va. June 20, 2025) ("This Court has repeatedly held that when a party fails to respond to an argument in an opposition brief, it abandons those arguments." (collecting cases)); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d

772, 783 (D. Md. 2010) ("By her failure to address these arguments in her opposition to TCG's motion to dismiss, Davenport has abandoned this claim."); *Carefirst of Md., Inc. v. Johnson & Johnson*, 745 F. Supp. 3d 288, 304 n.6 (E.D. Va. 2024) (collecting cases); *United States v. Fernandez-Sanchez*, 46 F.4th 211, 219 (4th Cir. 2022) ("A party also waives an issue by failing to develop its argument—even if its brief takes a passing shot at the issue." (citation modified)). The Court could grant NAACP Intervenors' Motion to Dismiss on this ground alone.

### B.    DOJ failed to state a proper "purpose" for its demand.

Even if DOJ had supplied a valid basis (which it did not and cannot), its letter "would remain legally insufficient to support a Title III records demand because its purpose would fall outside Title III's intended scope." *Amore*, 2026 WL 1040637, at *6. In their motion to dismiss, NAACP Intervenors explained that DOJ's stated purpose—to "ascertain Virginia's compliance with . . . the NVRA and HAVA," Am. Compl. ¶ 26, is not a permissible purpose for a demand made under the CRA. *See* NAACP MTD at 14–18; *see also Bellows*, 2026 WL 1430481, at *7, *9 ("whatever investigatory purposes may support a Title III records demand, voter list maintenance is not among them"). As one contemporary court explained, a jurisdiction's "failure[] to purge voters who have moved away or have died" simply "does not bear any particular importance to the present inquiry" under Title III. *Kennedy v. Bruce*, 298 F.2d 860, 863 n.2 (5th Cir. 1962).

The NVRA and HAVA impose their own comprehensive regulations and enforcement regimes, but they do not authorize demands like DOJ's here, and nothing in their text or the text of the CRA supports DOJ's position that it can circumvent the limitations of the NVRA's and HAVA's enforcement regimes by resorting to the CRA. *See id.* HAVA has no disclosure requirements at all, *see* NAACP MTD at 16, and DOJ does not argue that it is entitled to the records it seeks under the NVRA's disclosure provision, *see* 52 U.S.C. § 20507(i)(1). If DOJ "wants to enforce" the NVRA and HAVA, "it must use the pre-suit investigation and enforcement

10

mechanisms that Congress provided in those statutes", because the CRA does not authorize the compelled production of an unredacted SVRL "so that [DOJ] might loom over the shoulder" of states to point out purported inaccuracies in their lists. *Bellows*, 2026 WL 1430481, at *8. Congress's "express provision of one method of enforcing" these statutes "suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001).[3]

DOJ's reliance on past consent decrees and settlement agreements in which states have agreed to voluntarily produce voter file data does nothing to change this. Opp'n at 11–14. None of DOJ's examples involved a contested demand for voter file data under the CRA. *See generally id.* The fact that several States chose to turn over certain records without litigation says nothing about the meaning of the CRA—parties often settle "despite the fact that the case against the defendant is frivolous or groundless, solely in an effort to avoid the expense of litigation." *Tyler v. Corner Const. Corp.*, 167 F.3d 1202, 1206 (8th Cir. 1999); *see also Island Creek Coal Co. v. Lake Shore, Inc.*, 692 F. Supp. 629, 636 (W.D. Va. 1988), *rev'd on other grounds,* 884 F.2d 1388 (4th Cir. 1989) ("The Court agrees with the defendant that the mere settlement of a claim, without an

---

[3] DOJ argues that it needs Virginia's unredacted voter list to determine whether it contains HAVA identifiers, pointing to a unique situation that arose in North Carolina. *See* Opp'n at 11 (citing *United States v. N.C. State Bd. of Elections*, Consent J. & Order (E.D.N.C. Sept. 8, 2025)). In fact, DOJ learned that certain North Carolina counties were not collecting HAVA identifiers based on publicly available information, and then brought a substantive suit under HAVA, without ever invoking the CRA. The North Carolina case thus proves that DOJ does not need voter lists to assess whether Virginia collects HAVA identifiers. If DOJ had any legitimate suspicion here, it could ask the Commissioner whether Virginia is collecting this information; it could seek records under the NVRA on the process Virginia uses to collect and record the information; or it could issue a request under the NVRA for a list of all voters registered in the state *without* any recorded HAVA identifiers. It does not actually need those identifiers to conclude that the state is collecting this information; its only use for the identifiers is to do its own database matching, which nothing in federal law charges or authorizes the federal government to do. *See, e.g.*, *Bellows*, 2026 WL 1430481, *8 (rejecting the idea that the DOJ might legitimately "loom over the shoulder" of states to point out purported inaccuracies in their lists); *Oregon*, 2026 WL 318402 at *13 (observing that DOJ's voter roll demands "disturb the framework of federalism envisioned and enshrined in our Constitution.").

11

admission of liability, is not equivalent to a *finding* or *award*. . . . No one forced the plaintiffs to settle without obtaining an admission of liability."). Moreover, nearly every example DOJ gives involved actual substantive allegations that the State was in fact violating a federal law that DOJ was charged with enforcing, meaning the agency likely could have obtained the materials at issue through civil discovery. *See, e.g.*, Opp'n, Ex. 11, ECF No. 58-4, at 1 (describing complaint against Maine involving HAVA and NVRA claims); Opp'n, Ex. 12, ECF No. 58-5, at 1 (similar as to New Jersey); Opp'n, Ex. 13, ECF No. 58-6, at 2 (consent decree noting underlying action against Indiana was filed "pursuant to Section 8 of the National Voter Registration Act"); Opp'n, Ex. 16, ECF No. 58-9, ¶ 1 (complaint against Alabama alleging violations of Uniformed and Overseas Citizens Absentee Voting Act); Opp'n, Ex. 17, ECF No. 58-10, (similar as to Shelby County, Alabama); Opp'n, Ex. 18, ECF No. 58-11, at 1 (complaint alleging violations of UOCAVA by Vermont). These examples accordingly stand for nothing more than the commonsense proposition that States and localities have historically cooperated with DOJ's document demands when they were rooted in specific allegations of noncompliance with federal law. None stands for the proposition that the CRA is commonly used, on its own, to demand a State's full voter file at DOJ's caprice, as part of an unprecedented nationwide dragnet.

In short, DOJ's stated purpose in this case "lack[s] any reference or relation to the purposes for which Title III was enacted." *Oregon*, 2026 WL 318402, at *10; *see also Amore*, 2026 WL 1040637, at *6 (same). It is, in fact, *antithetical to* the CRA's purpose. *See Weber*, 816 F. Supp. 3d at 1182–84. Holding DOJ to the statute's terms does not "undermine the statute's purpose," Opp'n at 9; it enforces what Congress intended. The Court should reject DOJ's efforts to justify its demands with a purpose so disconnected from the provision that DOJ claims authorizes it. *See In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000) ("The requirement that subpoenas

12

be used only for a legitimate and authorized governmental purpose prohibits the government from 'engag[ing] in arbitrary fishing expeditions'") (citation omitted).

**IV.    DOJ failed to demonstrate that it is entitled to unredacted records because Title III does not preempt Virginia law.**

Even if DOJ's request did not fall outside of Title III (and for the reasons discussed, it plainly does), DOJ still would not be entitled to the records it seeks because Virginia law protects sensitive voter data, and nothing in Title III can be read to preempt those laws. As NAACP Intervenors have explained, Virginia law specifies that "[n]o list provided by the Department [of Elections]" or "made available for public inspection" shall contain "an individual's social security number, or any part thereof" or "the day and month of birth of an individual." Va. Code Ann. § 24.2-444(C); *see also id*. § 24.2-405(C) (providing that, aside from inapplicable exceptions, "[i]n no event" may state officials disclose lists of voters that "contain the social security number, or any part thereof, of any registered voter").

DOJ's only response is to point to an entirely *different* section of Virginia law, Va. Code § 2.2-3815(B)(2), which provides: "*The provisions of this section* shall not be construed to prevent the release of a social security number . . . [t]o any federal, state or local law-enforcement or correctional personnel . . . seeking information in the course of his official duties." (emphasis added). The restrictions that NAACP Intervenors rely on—§ 24.2-444(C) and § 24.2-405(C)—are in another section of the Virginia Code and are thus not part of "this section"—meaning § 2.2-3815. This exception from a distinct statute cannot be read into Virginia's *separate* statute protecting private SVRL information from disclosure.

Moreover, DOJ offers no argument against the legions of decisions, including from the Fourth Circuit, holding that the NVRA *does not* preempt State privacy protections, and in fact permits the redaction of sensitive information. *See* NAACP MTD at 19 & n.7 (collecting cases);

13

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 265 (4th Cir. 2021) (citing *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012)). The same preemption analysis applies to Title III, which uses similar language. *Compare* 52 U.S.C. § 20703 (providing in Title III that covered voting records held by a State election official "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with id.* § 20507(i)(1) (providing in the NVRA that States "shall make [covered voting records] available for public inspection"). It makes no sense to suggest that Congress intended Title III to preempt state privacy laws protecting highly sensitive voter data so that the federal government can assess compliance with voter list maintenance under the NVRA, when the NVRA itself reflects a congressional judgment *not* to preempt state privacy laws, as multiple courts have held. Relatedly, DOJ's claim that it is entitled to sensitive information because Title III requires the production of "all" records and papers, Opp'n at 20, is again at odds with mountains of decisions holding that redaction is permitted under the NVRA, which likewise mandates public inspection of "all" records, 52 U.S.C. § 20507(i)(1).

DOJ further argues that Title III must be read to reach sensitive information contained within voter files because otherwise Section 304 of the CRA—which limits the instances in which DOJ may "disclose" records it receives pursuant to a Title III demand—would have no purpose. Opp'n at 20; *see* 52 U.S.C. § 20704. That is wrong. Section 304 exists to prevent DOJ from disclosing sensitive information; it does not indicate any congressional intent to preempt States from enacting *broader* protections from disclosure. It is not unusual for Congress to place restrictions on the federal government's ability to disclose information even when the same data could be held and shared freely by other parties. The Privacy Act, for example, does just that. *See* 5 U.S.C. § 552a *et seq.* Moreover, some of the most sensitive information protected by Virginia

14

law (*e.g.*, social security numbers) was not required to be included in State registration records until HAVA was enacted decades after Title III. Clearly, then, Congress did not contemplate in 1960 that State voter records would contain such sensitive information. Even *Lynd* observed in 1962 that Title III was intended to reach only "public records which ought ordinarily to be open to legitimate reasonable inspection," and that it did *not* reach "confidential, private papers and effects." 306 F.2d at 231.

With the text and caselaw against it, DOJ resorts to policy arguments, complaining that it would not be able to "meaningfully investigate" a State's list maintenance efforts under HAVA and the NVRA without "access to the voter identification numbers." Opp'n at 20–21. Lurking in the background of DOJ's theory is the misguided assumption that Congress surely *meant* to provide DOJ this inspection tool for list-maintenance purposes. But there is no indication at all that Congress intended for DOJ to be able to "investigate" a State's compliance with HAVA or the NVRA using Title III. Where Congress did actually speak about the disclosure of voter list maintenance records—the NVRA—it permitted the "inspection" of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," 52 U.S.C. § 20507(i)(1), but did not prohibit the "redaction of uniquely sensitive information in otherwise disclosable documents." *Public Int. Legal Found.*, 996 F.3d at 267 (citation omitted). DOJ cannot supplant the inspection tool Congress *did* provide for federal list maintenance supervision—52 U.S.C. § 20507(i)—with the one DOJ *wishes* Congress provided.

Nor would the unredacted voter file meaningfully assist DOJ in evaluating whether Virginia has complied with the modest requirements of the NVRA and HAVA. All states must do to comply with those statutes' list maintenance requirements is make a "reasonable effort" to

15

remove the names of ineligible voters. 52 U.S.C. § 20507(a)(4); *id.* § 21083(a)(4)(A). The voter list by itself cannot reveal anything about Virginia's *programs* or *procedures* for list maintenance, which is all that the NVRA and HAVA reach. Moreover, a mere snapshot of Virginia's voter file and the data within it would become outdated almost immediately and shed little light on whether Virginia is complying with its list maintenance obligations.

Finally, there is no merit to DOJ's contention that it should be handed the sensitive information it seeks because "states have released to private parties even more detailed voter data than what the United States has requested." Opp'n at 21–22. To the contrary, in the case that DOJ cites in support of this argument, the court *excluded* social security numbers and other confidential information, and entered a protective order strictly limiting who can view the limited information that was produced, how they can view it, and for what purposes. *See* Protective Order & Schedule A, *Coal. for Open Democracy v. Formella*, No. 1:24-CV-00312-SE-TSM (D.N.H. June 18, 2025), Dkt. Nos. 87 & 87-1.[4] DOJ's assertion that states routinely share voter registration data with the Electronic Registration Information Center ("ERIC") is irrelevant because data shared with ERIC is cryptographically "hashed" to convert sensitive data into "a string of random characters" to avoid disclosure. *See Technology & Security Overview*, Electronic Registration Information Center, https://perma.cc/5568-64A7 (last accessed June 8, 2026). Moreover, Virginia law specifically authorizes election officials to share data with other states through systems like ERIC. Va. Code § 24.2-404(A)(10).

---

[4] DOJ has been informed about these restrictions in several other cases, including in briefs filed over six months before DOJ filed its brief here, *see, e.g.*, Reply Br. Supp. Mot. Intervene, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 3, 2025), Dkt. 31; Reply Br. Supp. Mot. Intervene, *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Dec. 16, 2025), Dkt. 22, but DOJ persists in repeating this false claim.

16

**V.    DOJ's collection of Virginia's voter list would violate the Privacy Act.**

Finally, DOJ's noncompliance with the Privacy Act of 1974 provides further reason its claim should be dismissed. *See* NAACP MTD at 19–23; *see also Weber*, 816 F. Supp. 3d at 1193–94 (dismissing on this basis, among others); *see also, e.g.*, *Gelbard v. United States*, 408 U.S. 41, 52, 60–61 (1972) (holding statutory prohibition on use of certain communications was properly invoked as a "defense" in action brought by DOJ to compel compliance with subpoena). These restrictions include both procedural and substantive restrictions, and courts have consistently held that federal agencies cannot maintain or use records absent strict adherence to these requirements. *See Weber*, 816 F. Supp. 3d at 1192; *see also Doe v. Stephens*, 851 F.2d 1457, 1466 (D.C. Cir. 1988) (describing the Privacy Act's requirements as "well-established"); *LULAC v. EOP*, 818 F. Supp. 3d 34, 109–17 (D.D.C. 2026). Notably, in a section of the Code that specifically "applies" to the Privacy Act's prohibitions, 5 U.S.C. § 555(a), Congress provided that an "investigative act or demand may not be issued, made, or enforced except as authorized by law," *id.* § 555(c) (emphasis added). DOJ's insistence that a protective order would alleviate any privacy concerns, Opp'n at 25 n.16, misses the mark: a protective order cannot excuse non-compliance with the Privacy Act's statutory demands.

Nor does DOJ dispute that the Privacy Act applies to its attempt to collect and maintain Virginia's voter registration list, nor that a statutorily compliant system of records notice ("SORN") is required. *See id.* at 25–26. While DOJ misunderstands the Privacy Act's requirements, it concedes that the Act applies here. *Id.* at 25. That means DOJ cannot collect or maintain Virginia's voter list unless there is a SORN that covers that system of records. 5 U.S.C. § 552a(e)(4). Although DOJ cites Federal Register notices containing SORNs in an attempt to show compliance with that requirement, *see* Opp'n at 26 n.17 (citing 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25,

17

2017)), none can be read to cover DOJ's unprecedented attempt to maintain a statewide voter list, as the district court held in *Weber*. *See* 816 F. Supp. 3d at 1193 ("If millions of Americans' private information is to be collected by the federal government, they deserve the ability to comment and voice their concerns before this collection occurs.").

The first SORN—68 Fed. Reg. 47610-01—merely notifies the public that the categories of individuals covered by the Civil Rights Division's general information system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other irrelevant categories. Applied here, DOJ's reliance on this SORN would implausibly mean every registered voter in Virginia (or, given DOJ's near-nationwide demands, every registered voter in the country) is a subject under investigation, a victim, or a witness in some unnamed matter. *See id.* That SORN similarly describes the categories of records in this system to "consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." *Id.* This language might cover run-of-the-mill files maintained for specific investigations and litigation matters, but it would be an extraordinary and startling construction of its terms to find they extend to a statewide (or nationwide) voter list, the likes of which have never before been compiled by the federal government. *Weber*, 816 F. Supp. 3d at 1193. "This SORN does nothing to put a member of the American public on notice that specifically, their voter registration data is going to be collected on an unprecedented level and used for a plethora of government activity." *Id.* at 1193–94.

The second and third SORNs cited by DOJ also plainly do not cover DOJ's maintenance or use of Virginia's SVRL. The first—from nearly a decade ago—adds a blanket "routine use" to all existing DOJ systems that is relevant only in the event of a data *breach*. *See* 82 Fed. Reg. 24147-01, 24148 (May 25, 2017); *Weber*, 816 F. Supp. 3d at 1194 (holding this SORN "lack[s] relevance

18

and specificity" to maintenance or use of a state voter roll). The other—from more than two decades ago—merely added an additional "routine use" noting that DOJ may make "disclosure[s] of information explaining [DOJ]'s decision to close a criminal matter to the local community or public," where certain conditions are met. *See* 70 Fed. Reg. 43904-01 (July 29, 2005); *see also Weber*, 816 F. Supp. 3d at 1194 (noting the SORN similarly fails to provide notice of what "private and sensitive information" in a VRL will be maintained or used). And even if DOJ could somehow shoehorn its collection of Virginia's SVRL into a past SORN, the agency would *still* have an obligation to comply with the mandatory prerequisites described above to specify the *new* categories of information being maintained and all *uses* of that specific data. *LULAC*, 818 F. Supp. 3d at 113–116; *see also Weber*, 816 F. Supp. 3d at 1193.

To hold that any of these SORNs—or that the general existence of SORNs published for other systems—is sufficient to allow DOJ to maintain sensitive information about every registered voter in Virginia (and across the country) would effectively nullify the Privacy Act's procedural safeguards, which this Court cannot do. *Weber*, 816 F. Supp. 3d at 1194; *see also Doe*, 851 F.2d at 1466 ("It is by now well-established that agencies covered by the Privacy Act may not utilize the 'routine use' exception to circumvent the mandates of the Privacy Act." (collecting cases)).

DOJ does not identify any other SORN that could conceivably cover this system of records. *See Weber*, 816 F. Supp. 3d at 1194 ("[N]one of the SORN[s] identified give sufficient notice to the American public as required under the Privacy Act."). Consequently, until DOJ complies with the Privacy Act's procedural requirements by publishing an appropriate SORN and allowing for public comment, the Privacy Act bars it from collecting and maintaining Virginia's voter list and renders its demand for that data under Title III invalid. *Id.* ("Because the DOJ has not fulfilled its

19

requirements under the Privacy Act, it cannot collect the sensitive, unredacted voting records of millions of Californians.").

## CONCLUSION

For all of the foregoing reasons, NAACP Intervenors respectfully request that the Court grant their motion, dismiss the Amended Complaint, and enter judgment for Defendants.


Dated: June 8, 2026                          Respectfully submitted,

*/s/ Aria C. Branch*
Aria C. Branch, VSB #83682
Richard A. Medina, DC Bar No. 90003752*
Kevin R. Kowalewski, NY Bar No. 5946645*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
abranch@elias.law
rmedina@elias.law
kkowalewski@elias.law

Walker R. McKusick, WA Bar No. 63205*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
wmckusick@elias.law

* Admitted *Pro Hac Vice*

*Counsel for NAACP Intervenors*

20

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 8th day of June, 2026, with a copy of this document via the Court's CM/ECF system.

*/s/ Aria C. Branch*
Aria C. Branch, VSB #83682
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4490
F: (202) 968-4498
abranch@elias.law

*Counsel for NAACP Intervenors*

21