IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,          )
       Plaintiff,                  )
                                   )
    v.                              )          Civil Action No. 3:26CV42 (RCY)
                                   )
STEVEN KOSKI, *in his official capacity*   )
*as Commissioner of the Virginia*          )
*Department of Elections*, *et al.*,       )
       Defendants.                 )
                                   )

**MEMORANDUM OPINION**

This action arises from the United States Attorney General's investigation into Virginia's compliance with federal election law. It is one of dozens of parallel suits filed against state election officials across the country. The case is before the Court on three Motions to Dismiss advanced by Virginia Department of Elections Commissioner Steven Koski ("Defendant Koski" or "Commissioner Koski") and two groups of intervening Defendants[1], respectively. Plaintiff, the United States, has also moved to compel production of Virginia's statewide voter registration list (SVRL).

The motions have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court such that oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons described herein, the Court will grant the Motions to Dismiss and deny the United States's Motion to Compel. These rulings will be fatal to the United States's suit.

---

[1] The Court previously authorized the National Association for the Advancement of Colored People (NAACP), the NAACP Virginia State Conference, Common Cause, and Ms. Katherine Ellena to permissively intervene as Defendants in this matter. *See* Mem. Order, ECF No. 44.

## I. STANDARD OF REVIEW[2]

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017).  By advancing a 12(b)(6) motion, a defendant asserts that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[2] The United States argues that the Federal Rules of Civil Procedure do not apply to this action because the Attorney General's filing of an application for an order under Title III of the Civil Rights Act (CRA) is a special statutory proceeding rather than an ordinary, traditional civil action.  Resp. Opp'n Mots. Dismiss 3, ECF No. 58; *see also* Am. Compl. ¶¶ 3–4, ECF No. 28 (characterizing the instant action as a special statutory or summary proceeding). The Court disagrees and accordingly applies the Federal Rules of Civil Procedure.

The text of the CRA, in granting jurisdiction to federal district courts where a demand to compel production of records is made, confers jurisdiction "by appropriate process." 52 U.S.C.A. § 20705.  Congress could have further defined appropriate process, but did not do so, strongly suggesting that the default procedural rules of federal courts apply.  Turning to those rules, Federal Rule of Civil Procedure 1 instructs: "These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81."  The CRA is not listed or otherwise contemplated at Rule 81.

The Supreme Court's decision in *United States v. Powell*, 379 U.S. 48 (1964), provides further assurance that the Federal Rules of Civil Procedure ought to apply to this action.  In *Powell*, the Supreme Court determined that identical language ("by appropriate process") in the context of different statutes concerning administrative summonses renders the Federal Rules of Civil Procedure applicable when there is no other provision specifying a substitute procedure to be followed.  *Id.* at 51 n.10, 58 n.18.  This mandatory authority binds the Court—not the Fifth Circuit's decision two years earlier to treat a CRA Title III proceeding by the United States Attorney General as something other than "an ordinary, traditional civil action."  *Kennedy v. Lynd,* 306 F.2d 222, 225 (5th Cir. 1962).  Further, in *Lynd,* it appears the Attorney General filed an "application" to compel production, *id.* at 225, whereas here, the United States affirmatively embraced the process of ordinary litigation by filing a Complaint and Amended Complaint.  *See United States v. Oregon*, 2026 WL 318402, at *8, n.1 (D. Or. Feb 5, 2026).

This Court thus joins the majority of other federal district courts that have recently considered this question in analogous suits by concluding that the Federal Rules of Civil Procedure apply in this CRA Title III action advanced by the United States Attorney General.  *See, e.g.*, *United States v. Oregon*, 2026 WL 318402, at *8; *United States v. Demarinis*, 2026 WL 1780586, at *3 (D. Md. June 18, 2026); *United States v. Fontes*, 2026 WL 1177244, at *1 (D. Ariz. Apr. 28, 2026); *United States v. Amore*, 2026 WL 1040637, at *3–4 (D.R.I. Apr. 17, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168, 1182 (C.D. Cal. Jan. 15, 2026); *United States v. Bellows*, 2026 WL 1430481, at *5, n.8 (D. Me. May 21, 2026); *United States v. Warner*, No. 2:26-CV-156, at 3–4 (S.D.W. Va. July 13, 2026); *United States v. Bd. of Elections of the State of N.Y.*, 2026 WL 1999921, at *6–7 (N.D.N.Y July 10, 2026).  *But see United States v. Benson*, 819 F. Supp. 3d 753, 765–66 (W.D. Mich. 2026) (applying Federal Rule of Civil Procedure 12(b)(6) because CRA records request was brought alongside other federal law claims).

misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  When deciding a motion to dismiss under Rule 12(b)(6), the Court "views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions.  *Id.*  Likewise, if the complaint "lacks a cognizable legal theory" as a matter of law, then dismissal is proper.  *Newport News Indus. v. Dynamic Testing, Inc.*, 130 F. Supp. 2d 745, 749 (E.D. Va. 2001).

Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required to satisfy Federal Rule 8(a)(2).  *Id.* (citations omitted).

At the motion to dismiss stage, a court may consider the face of the complaint, documents attached to the complaint, documents attached to a motion to dismiss that are integral to the complaint and whose authenticity is unchallenged, and matters of public record subject to judicial notice.  *Philips*, 572 F.3d at 180 (citation omitted).  Applying these standards, the Court construes the facts in the Amended Complaint, including any attached documents[3], as follows.

## II.  BACKGROUND

On July 15, 2025, the United States Attorney General sent a letter ("July 15 Letter") to then-Commissioner of the Virginia Department of Elections Susan Beals ("Commissioner Beals"),

---

[3] Although filed by the United States as exhibits to the Motion to Compel, two letters ought to have been attached to the Amended Complaint as they are referenced throughout and integral to that document.  Their authenticity has not been challenged.  The Court therefore considers the letters, for the essential context they provide, as discussed herein.  *See Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023).

seeking information regarding Virginia's compliance with federal election law, specifically the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA).  Am. Compl. ¶¶ 21–22.  Citing various statistics from a 2024 Election Administration and Voting Survey report, the July 15 Letter asked Commissioner Beals to explain certain data and requested additional information on behalf of the Attorney General, including the "current electronic copy of Virginia's computerized statewide voter registration list" and "all fields contained within the list."  *See id.*; Mot. Compel Ex. 2 at 2, ECF No. 39-3.

When Commissioner Beals did not respond within 14 days as requested, the Assistant Attorney General sent an additional letter ("August 14 Letter"), clarifying that the provided SVRL should include each registrant's "full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number."  Mot. Compel Ex. 3 at 2, ECF No. 39-4.  Citing the NVRA, HAVA, and Title III of the CRA as the authorities underlying its request, the August 14 Letter "demand[ed] an electronic copy of Virginia's complete and current [SVRL]" for the purpose of "ascertain[ing] Virginia's compliance with the list maintenance requirements of the NVRA and HAVA."  *Id.* at 3; *see also* Am. Compl. ¶ 26.

The United States represents that it had discussions with representatives of Commissioner Beals in the months following the July 15 and August 14 Letters; however, on January 8, 2026, "representatives for Commissioner Beals expressed in person that she would not be providing the SVRL."  Am. Compl. ¶ 27.  On January 16, 2026, the United States initiated this action, alleging that Commissioner Beals's refusal to provide election records pursuant to the Attorney General's written demands constituted a violation of the CRA.  *See generally* Compl., ECF No. 1.

On January 17, 2026, Abigail Spanberger was sworn in as Governor of the Commonwealth of Virginia, and she appointed Defendant Koski to serve as Commissioner of the Virginia Department of Elections.  Am. Compl. ¶ 28.  The United States amended its Complaint on March 19, 2026.  The one-count Amended Complaint against Commissioner Koski asks this Court to (1) declare that Defendant's refusal to provide the election records upon demand by the Attorney General violates Title III of the CRA, specifically 52 U.S.C. § 20703, and (2) order Defendant to provide the Attorney General with all fields of Virginia's current, electronic SVRL within five days of the Court's ruling.  *See id.* ¶¶ 29–31.

To date, Virginia officials "have not provided any documents responsive to the . . . outstanding demand for records."  *Id.* at ¶ 28.  On April 29, 2026, the United States separately moved to compel Commissioner Koski to produce the same SVRL at issue in the Amended Complaint as well as "such other federal records demanded by the Attorney General to ascertain Virginia's compliance with the NVRA and HAVA."[4]  Mot. Compel 2.

On May 6, 2026, the Court authorized two groups of Defendants to permissively intervene in this action: (1) the NAACP and the NAACP Virginia State Conference (together, "NAACP Intervenors"); and (2) Common Cause and Ms. Katherine Ellena (together, "Common Cause Intervenors").  Mem. Order, ECF No. 44.  On May 19, 2026, all Defendants filed Motions to Dismiss for Failure to State a Claim.  *See* ECF Nos. 46, 48, 50.  The Court authorized the Democratic National Committee to file an *amicus curiae* brief in support of Commissioner Koski's

---

[4] The United States does not specify exactly what "other federal records" it seeks as part of its Motion to Compel, s*ee generally* Mot. Compel 2, and all briefing by the Parties is focused on Virginia's SVRL.  This Opinion is thus necessarily circumscribed to the lawfulness of the United States's demand for Virginia's SVRL.  To the extent the United States invites the Court to presuppose the existence—and order production—of additional election records that Defendant Koski may or may not possess, the Court declines that invitation.  *See Philips N. Am. LLC v. Probo Med. LLC*, 2022 WL 17793491, at *3 (S.D.W. Va. Dec. 19, 2022) (describing as improper "fishing expeditions" that "exceed the boundaries of the complaint and are based purely on unsupported speculation."); *Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 531 (2009) ("Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through . . . records for evidence of some unknown wrongdoing.").

Motion to Dismiss.  *See* ECF Nos. 52-1, 67.  The Court further permitted the NAACP Intervenors to file two notices of supplemental authority, ECF Nos. 69, 70, 71, 72, and reviewed responses to both submitted by the United States, ECF Nos. 73, 74.

### III.  ANALYSIS

Commissioner Koski argues that the United States's Amended Complaint fails to state a claim for at least three reasons:  (1) Virginia's SVRL is not the type of "record" relating to a federal election that State election officials must make available for inspection under Title III; (2) the Attorney General failed to state the factual basis for demanding Virginia's SVRL; and (3) the purpose contained in the Attorney General's written demand was contrived and insufficient to require Virginia to make the records available under Title III.  Koski Mem. Supp. Mot. Dismiss ("Koski Mem. Supp.") 1, ECF No. 47.  The first ground has been briefed by Defendant Koski, the NAACP Intervenors, and the Common Cause Intervenors alike.  *See* Koski Mem. Supp. 8–11; NAACP Mem. Supp. Mot. Dismiss 7–9, ECF No. 49; Common Cause Mem. Supp. Mot. Dismiss 13–15, ECF No. 51.  The Court finds this ground persuasive and dispositive such that the Motion to Compel must be denied and the suit dismissed.  Virginia's SVRL is outside the scope of Title III of the CRA.  Thus, the United States fails to state a claim in its Amended Complaint.

### A.  Legal Landscape

The Court will briefly review the requisite statutory background.  Congress passed the Civil Rights Act of 1957 in response to de jure discrimination against Black voters in the American south.  *United States v. Benson*, __ F.4th __, 2026 WL 1815425, at *2 (6th Cir. June 24, 2026) (citing Pub. L. No. 85-315, 71 Stat. 634); *see also Weber*, 816 F. Supp. 3d at 1175 (describing "persistent voter suppression . . . preventing Black Americans from voting" during the Jim Crow era including destruction of records of those who had registered to vote).  The 1957 Act

"empowered the Attorney General to 'seek injunctions against public and private interference with the right to vote on racial grounds.'" *See Benson,* 2026 WL 1815425, at *2 (quoting *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966)). It did not, however, arm the Attorney General with the tools necessary to investigate allegations of voting discrimination because, although the federal government could institute proceedings, "it lacked the power pre-suit to compel the production of documents and records from States to build a discrimination case." *Id.* To address this issue, the Civil Rights Act of 1960 requires states to keep—and gives the Attorney General access to—certain voting records. *See id.* (first citing *Katzenbach*, 383 U.S. at 313; and then citing *United States v. Mississippi*, 380 U.S. 128, 134 (1965)). Title 52 U.S.C. § 20701 provides in pertinent part:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election . . . .

Section 20702 provides penalties for any person "who willfully steals, destroys, conceals, mutilates, or alters any record or paper" that § 20701 requires be retained and preserved. The following section—and basis of the instant suit—provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. § 20703.

The Amended Complaint advances a single count against Commissioner Koski for violation of § 20703 and thus makes no claims pursuant to the NVRA and HAVA. *See* Am.

7

Compl. ¶¶ 29–31.  As pertinent background, however, the NVRA requires States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters[,]" such as persons who have passed or moved away.  52 U.S.C. §20507(a)(4).  And the HAVA requires that States maintain and administer "a single, uniform, official, centralized, interactive computerized [SVRL] . . . that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter."  52 U.S.C. § 21083(a)(1)(A).  State election officials retain discretion under the HAVA to determine the appropriate method for creating, storing, and maintaining the voter registration list.  52 U.S.C. § 21085 (instructing that the "specific choices on the methods of complying with the requirements of [the] subchapter shall be left to the discretion of the State.").  *See also United States v. Wis. Elections Comm'n*, 2026 WL 1430354, at *1 (W.D. Wis. May 21, 2026).

## B.  CRA Claim

In line with the positions of Commissioner Koski and Intervening Defendants, and corresponding with a growing group of federal courts in analogous suits, this Court holds that Virginia's SVRL is not a record subject to production under Title III of the CRA.  Beginning with the statutory text, the CRA does not further define what it means for records or papers to "come into [the] possession" of an officer of election.  *See* 52 U.S.C. §§ 20701, *et seq.*   The Court therefore must assign the phrase its ordinary meaning.  *See EPA v. Calumet Shreveport Refin., LLC*, 605 U.S. 627, 638 (2025); *see also Sebelius v. Cloer*, 569 U.S. 369 (2013) ("[W]e start, of course, with the statutory text, and proceed from the understanding that, unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." (cleaned up, citation omitted)).  At this point, multiple federal courts, including the United States Court of

8

Appeals for the Sixth Circuit, have now engaged in the same statutory interpretation exercise for § 20701. *See Benson,* 819 F. Supp. 3d at 768–70; *Benson*, 2026 WL 1815425, at *4–6; *Demarinis*, 2026 WL 1780586, at *4–5; *Wis. Elections Comm'n*, 2026 WL 1430354, at *3; *Bellows*, 2026 WL 1430481, at *6; *Bd. of Elections of the State of N.Y.*, 2026 WL 1999921, at *8–11; *United States v. Scanlan*, 2026 WL 1864054, at *4–6 (D.N.H. June 29, 2026).

Around the time that Congress enacted Title III, the phrase "come into . . . possession" meant to "acquire," "obtain," or "receive." *Benson*, 2026 WL 1815425, at *4 (collecting mid-twentieth-century dictionary definitions). Commissioner Koski did not acquire, obtain, or receive Virginia's SVRL. Rather—and as mandated by the HAVA—Virginia election officials created the database themselves. Koski Mem. Supp. 7. "An ordinary English speaker would not say that she has come into possession of something that she created, established, and maintained." *Benson*, 2026 WL 1815425, at *5. This is because "[c]oming into possession of something most naturally implies receipt from an external source." *Bellows*, 2026 WL 1430481, at *6, n.10. Hence, Virginia's SVRL did not "come into [Koski's] possession" as that phrase is ordinarily understood. *See id.*

This interpretation of "come into his possession" is bolstered by the statutory language that immediately follows: "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. "Each of these terms refers to something that the voter submits or does as part of the registration process" and indicates that the sort of records covered by the statute are those that election officials *receive* as opposed to those they *create. Benson*, 819 F. Supp. 3d at 768–69. This, of course, makes perfect sense "given that when the CRA was passed, the federal government's attempts to protect the voting rights of Black citizens had been frustrated by state officials' destruction of voter registration applications." *Id.*

(citing *Report of the United States Commission on Civil Rights* 93 (1959), https://perma.cc/2PDF-GZHB).  The CRA responded to that problem by requiring States to preserve records that voters submitted to them—not records that the States had created themselves.  *Id.*

The Court is further obliged to "read [a statute's] words 'in their context and with a view to their place in the overall statutory scheme.'"  *Benson*, 2026 WL 1815425, at *4 (quoting *Calumet Shreveport Refin., LLC*, 605 U.S. at 643).  Recall that § 20702 criminalizes alteration of any record or paper that must be retained and preserved under § 20701.  Virginia's SVRL is a dynamic database that state election officials regularly modify to reflect the current voter registration roll.  Koski Mem. Supp. 9.  Adopting the United States's reading of § 20701 could render regular list maintenance (for example, removing deceased individuals or updating residential addresses) illegal activity subject to criminal penalties.  Even worse, construing § 20701 in a manner that subjects Virginia's SVRL to Title III "would place Title III on a collision course with [the] NVRA and HAVA."  *Benson*, 2026 WL 1815425, at *6.  Title III requires election officials to retain and preserve records and papers that come into their possession, while the NVRA and HAVA direct election officials to remove ineligible voters from voter registration lists.  *Id.*  Plaintiff's proposed interpretation would untenably "place election officials in violation of one federal law for trying to comply with the others."  *See id.*  The harmonious-reading canon of statutory interpretation thus also cuts against the position advanced by the United States.  *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, at 502 (2018) (describing the Court's "duty to interpret Congress's statutes as a harmonious whole rather than at war with one another"); *see also Demarinis*, 2026 WL 1780586, at *5 (declining to read § 20701 to produce this "absurd result"); *Fontes*, 2026 WL 1177244, at *4.

The United States makes several arguments in support of its preferred interpretation of §§20701, *et seq.*  None are persuasive.  First, Plaintiff insists that "all records" in § 20701 means *all* records, including Virginia's SVRL.  Resp. Opp'n Mots. Dismiss 7–9.  This reading, however, would require the Court to ignore that Congress was more specific in writing "all records and papers *which come into [the officer of election's] possession*."  The surplusage canon of construction cautions against assuming that statutory terms chosen by Congress are void of significance.  *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 53 (2024).  If Congress did intend to say "all records," full stop, it had the proper punctuation available.  This point is buttressed by the fact that Congress chose "all records" without a qualifier in the context of the NVRA.  *See* 52 U.S.C. § 20507(i)(1); *see also Benson*, 819 F. Supp. 3d at 768.  This Court agrees with the District of Arizona that, based on the plain meaning of the statutory text, the "broad swath of documents" covered by § 20701 "is not limitless."  *Fontes*, 2026 WL 1177244, at *5–7.

Next, invoking a Freedom of Information Act (FOIA) case, the United States argues that "an agency record can be both created by the agency and have come into the agency's possession" because "coming into possession of material refers to *when*, not how, the possession began."  Resp. Opp'n Mots. Dismiss 9 (citing *DOJ v. Tax Analysts*, 492 U.S. 136, 144–45 (1989)).  The Court is not persuaded, however, that the Supreme Court's broad interpretation of "agency records" in the context of a FOIA provision is particularly instructive when "records" as used there is not modified with the "come into . . . possession" language employed in the relevant CRA provision here.  *See Tax Analysts*, 492 U.S. at 142.  The Court agrees with the Sixth Circuit that the United States's reliance on *Tax Analysts* is "misplaced."  *See Benson*, 2026 WL 1815425, at *7.  Further, § 20701 already has an explicit temporal component—a period of twenty-two months from the date of certain enumerated elections—so there is no reason to believe "come into his possession" is

11

imbued with a hidden meaning about additional time restraints.  *See Wisc. Elections Comm'n*, 2026 WL 1430354, at *4.

Third and finally, the United States rejects the idea that its understanding of the CRA creates conflicts with the NVRA and HAVA because § 20702 criminalizes the *willful* alteration of records.  So, reasons Plaintiff, the statute does not create liability for SVRL maintenance undertaken without ill intent.  Resp. Opp'n Mots. Dismiss 9–10.  One can certainly imagine a world in which the NVRA and HAVA demand "good" SVRL alterations, while the CRA punishes "bad" SVRL alterations.  However, a more natural understanding, especially considering that the existence of a computerized voter list would not have been foreseeable to Congress in the 1960s, is that the NVRA and HAVA promote SVRL maintenance, and the CRA simply does not contemplate that kind of record.  *See* Benson, 819 F. Supp. 3d at 770.  As the Western District of Wisconsin pointed out, even if the criminal penalties of § 20702 can "conceivably be reconciled" with the United States's interpretation of Title III, "there is still tension in a statutory construction that applies Title III's requirements to non-permanent records like voter registration lists."  *Wisc. Elections Comm'n*, 2026 WL 1430354, at *5.  For example, what would it mean to "retain" and "preserve" a database like Virgina's SVRL, which is continuously updated?  *See* 52 U.S.C. §20701.  For this and the other reasons described herein, the Court finds that the Amended Complaint fails to state a claim because Virginia's SVRL is outside the scope of the CRA by the plain meaning of the statutory text.

## IV.  CONCLUSION

Because the Court finds Virginia's SVRL to be outside the scope of Title III of the CRA, the Motions to Dismiss will be granted.  Likewise, because the United States's Motion to Compel seeks the same relief as the Amended Complaint for essentially the same reasons, that Motion will

be denied.  The Court need not and does not reach Defendants' arguments with respect to the sufficiency of the Attorney General's written demand nor the privacy and preemption issues that may or may not accompany SVRL disclosure.

Given this Court's holding that the CRA does not require production of Virginia's SVRL, no further amendment of the Amended Complaint could cure the defects in Plaintiff's one-count CRA suit.  *Demarinis,* 2026 WL 1780586, at *5; *see also Dominio Sugar Corp. v. Sugar Workers Loc. Union 392,* 10 F.3d 1064, 1066–67 (4th Cir. 1993).  Dismissal will therefore be with prejudice.  An appropriate Order shall issue.

_____ /s/
Roderick C. Young
United States District Judge

Date: July 14, 2026
Richmond, Virginia

13